1998 OK 108

**TRANSPORTATION INFORMATION SERVICES, INC., d/b/a DAC Services, Plaintiff/Appellee,**

v.

**STATE of Oklahoma ex rel. OKLAHOMA DEPARTMENT OF CORRECTIONS, Defendant/Appellant.**

No. 85665.

Supreme Court of Oklahoma.

Oct. 27, 1998.

As Corrected Nov. 4, 1998.

Vincent L. Knight, Ronald A. Anderson, Oklahoma Department Of Corrections, Oklahoma City, Oklahoma, For Defendant/Appellant.

Stuart D. Campbell, Vivian C. Hale, Gable & Gotwals, Tulsa, Oklahoma, For Plaintiff/Appellee.

Michael Minnis, David McCullough, Michael Minnis & Associates, Oklahoma City, Oklahoma, For Amicus Curiae Oklahoma Press Association.

B.J. Rothbaum, Linn & Neville, P.C., Oklahoma City, Oklahoma, For Amicus Curiae Oklahoma Publishing Company.

HARGRAVE, Justice.

¶1 Transportation Information Services, Inc., d/b/a/ DAC Services, (TISI), represents a large number of trucking companies, providing employment and criminal background information on potential employees of those companies after the companies have obtained permission from the job applicant for the release of information. On May 5, 1993, TISI sent a written request to the Department of Corrections pursuant to the Oklahoma Open Records Act, 51 O.S.1991 § 24A.1 et seq., seeking information from DOC's public offender records for the past seven years, in a magnetic tape format. TISI offered to pay reasonable expenses incurred in providing the information. Specifically, TISI sought to obtain the name, social security number, date of birth, gender and race, institution, dates of incarceration, jail credit earned and reason for incarceration.

¶2 The Department of Corrections (DOC) denied the request, stating that the information was available only upon request about an individual inmate, and that they could not support commercial enterprise with state employee labor. TISI continued to request the information but the Department of Correction again refused to provide the information. On April 6, 1995, TISI sought a petition for declaratory relief and an alternative writ of mandamus before the district court of Oklahoma County.

¶3 The trial court issued a peremptory writ of mandamus on May 12, 1995, ordering DOC to comply with TISI's request under the Open Records Act and to furnish, at a minimum, the following information on every person incarcerated in Oklahoma during the past seven years: a) name, social security number and date of birth; b) dates of incarceration; and c) reason for incarceration of all inmates for the preceding seven years. The trial court ruled that certain information

was exempt from production under the Open Records Act and would not be furnished: a) privileged items concerning sex offenders; b) Regimented Inmate Detention (RID) information; c) information filed under seal, or d) expunged information. The trial court found that TISI was seeking the information for commercial purposes and directed TISI to pay the reasonable direct cost of obtaining and furnishing the information, which DOC had calculated to be $964.69. TISI is required to pay DOC the sum of $89.10 per request for updated annual reports. The writ was stayed pending appeal.

¶ 4 DOC appealed, arguing that law enforcement records are available only for inspection (not for copying) under § 24A.8 of the Oklahoma Open Records Act, and that requests for criminal history records must be made to the Oklahoma State Bureau of Investigation (OSBI) by individual request under 74 O.S. § 150.9. The Court of Civil Appeals affirmed. This Court granted DOC's petition for certiorari.

¶ 5 At the hearing DOC stipulated that it is a public body that keeps records, that it has the requested information, and that it is subject to the Oklahoma Open Records Act. DOC freely admitted that it would be required to furnish the information if requested on an inmate-by-inmate basis. DOC argued that mandamus did not lie because plaintiff had no vested legal right to the records, relying on four arguments: 1) that § 24A.8 of the Oklahoma Open Records Act only requires law enforcement records to be available for "inspection," not for ownership or possession; 2) that criminal history records must be obtained from the OSBI pursuant to 74 O.S. Supp.1994 § 150.9 at the rate of $15 per request; 3) that state labor may not be used to benefit a commercial enterprise; and 4) that DOC's interests in refusing the information outweighed TISI's interests in obtaining the information, citing *Cummings & Associates v. Oklahoma City*, 849 P.2d 1087 (Okla.1993).

¶ 6 TISI argues that DOC was required to furnish the information under Section 24A.5 of the Oklahoma Open Records Act, which provides that the records of public bodies shall be open to any person for inspection, copying or mechanical reproduction during regular business hours. If the information is requested solely for a commercial purpose, the public body may charge a reasonable fee to cover the direct cost of document search. TISI was prepared at all times to pay the reasonable costs of getting the information. 51 O.S.1991 § 24A.5 provided, in pertinent part:[1]

### § 24A.5 Inspection, copying and/or mechanical reproductions of records—Exemptions.

*All records of public bodies and public officials shall be open to any person for inspection, copying, and/or mechanical reproduction during regular business hours; provided:*

1. The Oklahoma Open Records Act does not apply to records specifically required by law to be kept confidential including:

a. records protected by a state evidentiary privilege such as the attorney-client privilege, the work product immunity from discovery and the identity of informer privileges; or

b. records of what transpired during meetings of a public body lawfully closed to the public . . .

2. Any reasonably segregable (sic) portion of a record containing exempt material shall be provided after deletion of the exempt portions, provided however, the Oklahoma Department of Public Safety shall not be required to assemble for the requesting person specific information requested from the Oklahoma Department of Public Safety's Driver License file relating to persons whose names are not furnished by the requesting person

3. Any request for a record which contains individual records of persons and the cost of copying, reproducing or certifying

1. § 24A.5 was amended by Laws 1993, c. 39, § 1, eff. Sept. 1, 1993 and by Laws 1996, ch. 209 § 2, effective Nov. 1, 1996. Specifically, in 1996 the following sentence was added to Section 24A.5.2: "The Oklahoma State Bureau of

Investigation shall not be required to assemble for the requesting person any criminal history records relating to persons whose names and dates of birth are not furnished by the requesting person."

such individual record which is otherwise prescribed by state law, the cost may be assessed for each individual record, or portion thereof requested as prescribed by state law. Otherwise, a public body may charge a fee only for recovery of the reasonable, direct costs of document copying, and/or mechanical reproduction. In no instance shall said document copying fee exceed twenty-five cents ($0.25) per page ... or a maximum of One Dollar ($1.00) per copied page for a certified copy. *However, if the request is:*

*a) solely for commercial purpose; or*

*b) clearly would cause excessive disruption of the public body's essential functions;*

*then the public body may charge a reasonable fee to recover the direct cost of document search* ... Said fees shall not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information.

4. [provides that tract indexes shall not be copied or mechanically reproduced for purpose of sale of such information]

5. A public body must provide prompt, reasonable access to its records but may establish reasonable procedures which protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions. (emphasis added)

■ ¶ 7  TISI was entitled to the requested information under 51 O.S. § 24A.5. The same information would have been available to TISI if requested from a law enforcement agency pursuant to § 24A.8 of the Oklahoma Open Records Act, which deals specifically with information required to be made available by law enforcement agencies. At the hearing DOC maintained that it is not a law enforcement agency under Section 24A.8 of the Oklahoma Open Records Act.[2] The information sought by TISI falls within the eight categories of law enforcement records that shall be made available for public inspection under § 24A.8:

"**§ 24A.8.  Law enforcement records—Disclosure**

A.  Law enforcement agencies shall make available for public inspection, if kept, the following records:

1.  An arrestee description, including the name, date of birth, address, race, sex, physical description, and occupation of the arrestee;

2.  Facts concerning the arrest, including the cause of arrest and the name of the arresting officer;

3.  Conviction information, including the name of any person convicted of a criminal offense;

4.  Disposition of all warrants, including orders signed by a judge of any court commanding a law enforcement officer to arrest a particular person;

5.  A chronological list of incidents, including initial offense report information showing the offense, date, time, general location, officer and a brief summary of what occurred;

6.  A crime summary, including a departmental summary of crimes reported and public calls for service by classification or nature and number;

7.  Radio logs, including a chronological listing of the calls dispatched; and

8.  Jail registers, including jail blotter data or jail booking information recorded on persons at the time of incarceration showing the name of each prisoner with the date and cause of his commitment, the authority committing him, whether committed for a criminal offense, a description of his person, and the date or manner of his discharge or escape.

B.  Except for the records listed in subsection A of this section and those made

---

**2.**  The trial judge specifically asked whether DOC is a law enforcement agency under the Act. DOC counsel responded, "We're not a law enforcement agency." The Oklahoma Open Records Act § 24A.3.5 defines law enforcement agency as: "any public body charged with enforcing state or local criminal laws and initiating criminal prosecutions, including, but not limited to, police departments, county sheriffs, the Department of Public Safety, the Oklahoma Bureau of Narcotics and Dangerous Drugs Control, the Alcoholic Beverage Laws Enforcement Commission, and the Oklahoma State Bureau of Investigation." On appeal, DOC argues that its criminal history records are law enforcement records only available for *inspection* under § 24A.8.

open by other state or local laws, law enforcement agencies may deny access to law enforcement records except where a court finds that the public interest or the interest of an individual outweighs the reason for denial."

Section 24A.8 allows much more information to be made available by law enforcement agencies than that sought by TISI.

■ ¶ 8 DOC's primary argument on appeal is that criminal history records must be obtained from the Oklahoma State Bureau of Investigation (OSBI) at the cost of $15.00 each per inmate request, under title 74 O.S. Supp.1994 § 150.9. Title 74 O.S.1991 § 150.9, which was in effect when TISI's request for information was made, provided:[3]

**§ 150.9 System of criminal identification—Fee for criminal history investigation and fingerprints.**

A. The Oklahoma State Bureau of Investigation shall procure and file for record, photographs, descriptions, fingerprints, measurements and other pertinent information relating to all persons who have been convicted of a felony within the state and of all well-known and habitual criminals, and it shall be the duty of the persons in charge of any state institution to furnish such data upon the request of the Director of the Bureau. The Oklahoma State Bureau of Investigation shall cooperate with and assist the sheriffs, chiefs of police and other law enforcement officers of the state in the establishment of a complete *system of criminal identification,* and shall file for record the fingerprint impressions of all persons confined in any workhouse, jail, reformatory or penitentiary on felony charges and any other pertinent informa-

tion concerning such persons as it may from time to time receive from the law enforcement officers of this and other states.

¶ 9 Subsection B of the above Act provided that the Consumer Credit Department, the State Insurance Commission, the Horse Racing Commission, or any other state agency, board, department or commission *requesting an analysis of fingerprints for licencing purposes* by the Bureau on any person shall pay a fee of $41.00 to the Bureau for each such investigation. Subsection C of the Act provided that an owner *or administrator of a child care facility requesting a criminal history investigation of an applicant for employment* shall pay a $10 fee for each such investigation, or $41.00 for a fingerprint analysis.

¶ 10 TISI did not request either a criminal history investigation or a fingerprint analysis, which were the only fee-required services set out in § 150.9 when TISI requested the information in 1993. Prior to the 1994 amendment, there was no provision for criminal history reports obtainable under § 150.9 by individuals or commercial entities. Subsection C charged a $10 fee only for a criminal history investigation requested by child care facilities, and Subsection C charged $41.00 only for a fingerprint analysis requested by state entities. In any event, because we have determined that the information sought by TISI was obtainable under § 24A.5, we need not answer the remainder of DOC's arguments pertaining to § 24A.8.

¶ 11 DOC did not introduce any evidence of excessive disruption of its essential functions nor evidence that the information could not be segregated as requested. Testimony

---

**3.** Title 74 O.S. § 150.9 was Amended by Laws 1994, c. 259, § 2, eff. Sept. 1, 1994. The amendment added the following section:

"B. The Oklahoma Department of Consumer Credit, the Oklahoma State Insurance Commission, the Oklahoma Horse Racing Commission, or any other state agency, board, department or commission *or any other person or entity requesting a criminal history record or an analysis of fingerprints for commercial, licensing or other purposes, except law enforcement purposes,* shall pay a fee to the bureau for each criminal history record or fingerprint analysis as follows:

| | |
|---|---|
| Oklahoma criminal history record only | $15.00 each |
| Oklahoma criminal history record with fingerprint analysis | $35.00 each |
| National criminal history record with fingerprint analysis | $41.00 each |

... Following receipt of the appropriate fee, the Bureau shall provide, as soon as possible, the criminal history record requested; provided, however, it shall be the duty and responsibility of the requesting authority to evaluate the criminal history record as such record may apply to a specific purpose or intent." (emphasis added)

taken at the hearing from DOC's public information administration officer was that the information could be segregated and that the cost of preparing the information would be $964.69 initially and $89.10 for each annual update. The trial judge asked DOC counsel if there was a way that the information could be provided with the confidential information excluded. DOC counsel responded: "Yes, sir, there's a way it can be done. We have testimony and we want to put them on to evaluate the costs and make a record of that cost for your information and their information and our information for appeal. Or shall we just stipulate to what it would cost? We could just give you a bottom .line figure; however you want to do it."

¶ 12 DOC's sole witness was Jim West, DOC's Administrator of Information Services. Mr. West stated that he is responsible for all of the data processing activities and telecommunications activities within DOC. DOC counsel asked Mr. West if he had calculated what it would cost to comply with the TISI's request. Mr. West was asked to explain to the court what would be involved to retrieve the requested data and to develop a program that would do so and to provide it in the requested media. Mr. West testified: "We have a one time cost to develop the program, to test the program and to prepare it. We estimate that to be $964.69. Thereafter for each request which was on an annual basis in that we didn't add this recurring development cost, the program would be the only operation cost, it would be $89.10 based upon current rates." The rate quoted was based upon a current computer rate of $908.34 per hour. TISI agreed to pay the amount and the trial judge ordered DOC to provide a minimum of the information requested by TISI, to exclude the listed confidential information, and ordered TISI to pay the amounts set by DOC. The witness was questioned about DOC's Exhibit 1, which detailed the amounts to be charged for providing the information, and was asked to tell the court what information is contained on DOC's data tapes. The third page of the exhibit shows the information kept on the computer tapes. The witness testified that the most prominent information is called profile, which is generalized

information, followed by sentence information, transfer information, alias information, history information, health information, etc. Mr. West specifically was asked by DOC counsel: " ... And taking a look at what they need, you're telling the Court, essentially we could—we have the capability of screening all this information out and providing those several pieces of information?" Mr. West replied: "Yes, processing this individual data probably is not a problem. The issue you were addressing earlier is to make sure that we don't put an individual on this file that shouldn't be, such as those deferred's or the RID's ..."

¶ 13 DOC's final argument, that its reasons for denying the information are outweighed by TISI's commercial purpose in seeking the information, relies upon *Cummings & Associates v. Oklahoma City*, 849 P.2d 1087 (Okla.1993). *Cummings* is inapposite because information requested by TISI in this case is specifically listed in the Open Records Act as information required to be made available by law enforcement agencies. In *Cummings*, the records sought from the Oklahoma City police department, a law enforcement agency, did not fall within one of the eight categories of crime-related documents required to be made available for inspection. Therefore, § 24.8(B) applied. Under § 24.8(B), the traffic collision reports could be withheld if the department's interest was sufficient to outweigh the lawyers' interest in the reports for client solicitation. We said in *Cummings* that the department's denial of the request was based on the department's method of maintaining its reports. All crime incident reports, plus the traffic reports, (a total of some 400 or more reports) per day were forwarded to the data entry department to be entered for microfilming and copies were then sent to the Department of Public Safety. Requests for copies of traffic reports were filled by using a computer system to search the name of those involved in the accident, their birthday, home address, incident number and date and time of accident. Without at least some of the requested information about a particular traffic accident, a report, the computer was unable to generate a list of accidents using

only a date, and would have required development of a special program.

¶ 14  We said, in *Cummings*, that the trial court balanced the interests, correctly finding that the departments interest outweighed the lawyers interest in soliciting clients. The request did not justify requiring law enforcement agencies to make special arrangements to provide traffic collision reports to lawyers without the basic information required of every other person requesting a copy of a report. The ruling did not prevent lawyers from obtaining copies of specific reports.

■ ¶ 15  In spite of its various arguments, DOC admits that it maintains the records requested, and that TISI would be entitled to the information from it *if the request were submitted on an inmate-by-inmate basis.* There is no legal authority for DOC's claim that requests to it must be made on an individual basis. The trial judge found that DOC was covered by the Act, and that it was required under the Act to release the information requested. The Department's information services administrator testified that their cost to retrieve the data and develop "the program that it would take to do that and to provide it in a media which they requested" would be a one time cost to develop the program, to test it and to prepare it, estimated at $964.69. The additional annual operational cost of providing updates would be $89.10. The trial court ordered the information released at the rates calculated by DOC. The trial judged granted the writ of mandamus, with the exceptions that DOC not include sealed records, deferred sentence information, information under the Sex Offenders Act and information under the Regimented Inmate Discipline (RID) program

■ ¶ 16  DOC's contention that providing the information to a commercial enterprise is a "gift" prohibited by state law is without foundation. Section 24A.5, paragraph 6 provides that "a public body *shall* designate certain persons who are authorized to release records of the public body for inspection, copying or mechanical reproduction. *At least one person shall be available*

*at all times to release records during the regular business hours of the public body."* (emphasis added) There is no legal foundation for DOC's assertion that the state is losing the value of the difference between what the OSBI could charge and what it will cost DOC to provide the information. The trial judge ordered DOC to determine how much it would cost to provide the service requested by TISI. DOC came up with the figures and provided them to the judge, and the trial judge used *the figures provided by DOC* in assessing the reasonable costs of obtaining the information that TISI would be required to pay since its request was for a commercial purpose, under § 24A.5. As noted above, DOC did not introduce any evidence of excessive disruption of its essential functions or that the information could not be segregated as requested. Accordingly, TISI had a legal right to the requested information under the Oklahoma Open Records Act.

## MOTION FOR APPEAL–RELATED ATTORNEY FEES

¶ 17  TISI filed a motion for attorney fees in the Court of Civil Appeals after its opinion was filed but before DOC's petition for certiorari was filed. DOC filed an objection arguing only that the motion was premature. TISI sought attorney fees, pursuant to 12 OS. Supp.1996 § 696.4(C), for services performed "in district court and on appeal." Section 696.4(C), however, refers only to appeal-related attorney fees. It does not appear that TISI filed a motion for attorney fees in the trial court, as provided in Section 696.4(B).[4] We have said that the time to assert a claim for equitable litigation costs is in the trial court before the appeal. *Voiles v. Santa Fe Minerals, Inc.,* 911 P.2d 1205, 1213 (Okla.1996). Accordingly, we have before us only the motion for appeal-related attorney fees.

■ ¶ 18  Appeal-related attorney fees are recoverable when there is statutory authority for the award of attorney fees in the trial court. *First Community Bank v. Hodg-*

---

4. Title 12 O.S. Supp.1996 § 696.4B provides that if attorney fees have not been included in the judgement, a party must file an application with

the court clerk, including the information set out therein, within thirty days after filing of the judgment.

*es*, 907 P.2d 1047, 1054 (Okla.1995). TISI relies on 51 O.S.1991 § 24A.17B as statutory authority for award of attorney fees before the trial court as the basis for an award of appeal-related attorney fees. Title 51 O.S. 1991 § 24A.17B provides:

"B. Any person denied access to a record of a public body or public official may bring a civil suit for declarative and/or injunctive relief and, if successful, shall be entitled to reasonable attorney fees. If the public body or public official successfully defends a civil suit and the court finds that the suit was clearly frivolous, the public body or public official shall be entitled to reasonable attorney fees."

¶ 19 Title 51 O.S.1991 § 24A.17B provides the statutory basis for award of attorney fees in the trial court and the motion for appeal-related attorney fees is granted. *Baptist Medical Center of Oklahoma, Inc. v. Aguirre*, 1996 OK 133, n. 19, 930 P.2d 213, 219. The motion for appeal-related attorney fees is not premature. 12 O.S. Supp.1996 § 696.4(C) provides that the application for attorney fees for services performed on appeal shall be made to the appellate court either in the brief on appeal or by separate motion any time before issuance of mandate. The matter is remanded to the trial court to determine a reasonable appeal-related attorney fee upon notice and adversary hearing.

**CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; TRIAL COURT AFFIRMED AND REMANDED TO DETERMINE A REASONABLE APPEAL-RELATED ATTORNEY FEE.**

¶ 20 SUMMERS, V.C.J., and HODGES, LAVENDER, SIMMS, OPALA and WATT, JJ., concur.

¶ 21 KAUGER, C.J., ALMA WILSON, J., concur in part and dissent in part.

¶ 1 KAUGER, C.J., concurring in part and dissenting in part:

¶ 2 I concur in the portion of the majority opinion allowing the plaintiff/appellee, Transportation Information Services [TISI], to recover appeal-related attorney fees and access to personal information collected by law enforcement agencies to the extent that the information requested conforms with that authorized to be released pursuant to 51 O.S. 1991 § 24A.8.[1] However, TISI's request for information includes social security numbers. Because § 24A.8 does not include social security numbers in the list of items which a law enforcement agency may release, because the statute allows a law enforcement agency to deny access to information not enumerated in § 24A.8, and because there is no opportunity for all individuals covered by the requested records to waive the privilege to their production, I dissent in part.

1. Title 51 O.S.1991 § 24A.8 provides in pertinent part:

"A. A law enforcement agency shall make available for public inspection, if kept, the following records:
1. An arrestee description, including the name, date of birth, address, race, sex, physical description, and occupation of the arrestee;
2. Facts concerning the arrest, including the cause of arrest and the name of the arresting officer;
3. Conviction information, including the name of any person convicted of a criminal offense;
4. Disposition of all warrants, including orders signed by a judge of any court commanding a law enforcement officer to arrest a particular person;
5. A chronological list of incidents, including initial offense report information showing the offense, date, time, general location, officer and a brief summary of what occurred;
6. A crime summary, including a departmental summary of crimes reported and public calls for service by classification or nature and number;
7. Radio logs, including a chronological listing of the calls dispatched; and
8. Jail registers, including ail blotter data or jail booking information recorded on persons at the time of incarceration showing the name of each prisoner with thc date and cause of his commitment, the authority committing him, whether committed for a criminal offense, a description of his person, and the dat or manner of his discharge or escape.
B. Except for the records listed in subsection A of this section and those made open by other state or local laws, law enforcement agencies may deny access to law enforcement records except where a court finds that the public interest or the interest of an individual outweighs the reason for denial...."

¶3 Under 74 O.S.1991 § 24A.8(B),[2] law enforcement agencies may deny access to information not listed in the statute. In enacting § 24A.8(B), the Legislature did not enumerate social security numbers as an item open to public inspection under the statute. If it had intended that social security numbers be released without permission of a holder—as is the case with some individuals here—it could have done so. This Court does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy.[3] It is for the Legislature subject to any constitutional limitations to determine: 1) whether personal information may be released; and 2) what kind of information law enforcement agencies may provide without a waiver from the individuals involved.

¶4 The Oklahoma Open Records Act [Act], 51 O.S.1991 § 24A.1 *et seq.*, does not specifically prohibit the release of social security numbers in response to requests promulgated pursuant to the Act. However, the Legislature has forbidden the release of state employee social security numbers[4] and it has restricted access to information indexed by social security numbers to those instances where there has been a personal waiver or the release is required by law.[5] Generally, under 74 O.S. Supp.1996 § 3111,[6] state agencies may not refuse services or assistance based upon an individual's refusal to provide a social security number nor may they use social security numbers for any purpose unless the numbers were being utilized prior to January 1, 1994. Two federal courts have recognized that the release of social security numbers may constitute a clearly unwarranted invasion of privacy.[7]

¶5 Nevertheless, the records could be provided with redaction of the social security numbers and an increased fee for collection. Section 24A.5 of the Open Records Act provides that "any reasonably segregable portion of a record containing exempt material shall be provided after deletion of the exempt portions," and it allows a public body to recoup reasonable fees for document searches requested for commercial reasons.[8]

2. Title 74 O.S., 1991 § 24A.8(B), see note 1, supra.

3. *In re Anderson*, 1997 OK 135, 932 P.2d 1110, 1114–15; *City of Hugo v. Public Employees Relations Bd.*, 1994 OK 134, 886 P.2d 485; *McSorley v. Hertz*, 1994 OK 120, 885 P.2d 1343, 1352.

4. Title 74 O.S. Supp.1992 § 840–2.11 provides:

"State employee home addresses, state employee home telephone numbers, and state employee social security numbers shall not be open to public inspection or disclosure."

5. Title 74 O.S.1991 § 3113 provides:

"No state agency, board, commission or other unit or subdivision of state government may furnish any information indexed by social security number unless required by law or specifically authorized to do so by the holder of said social security number. Provided that this section shall not apply to a report produced by a state agency of monetary payments made to any state official or employee from State Treasury funds or accounts."

6. Title 74 O.S. Supp.1996 § 3111 provides in pertinent part:

"A. No state agency, board, commission or other unit or subdivision of state government shall request or require that any person reveal the social security number of such person in order to obtain services or assistance, nor shall any state agency, board, commission or other unit or subdivision of state government use, or any purpose, numbers which correspond to the social security number of any person. Provided that any state agency, board, commission, unit or subdivision of state government using social security numbers for a particular purpose prior to January 1, 1974, may continue to use and require social security numbers for that purpose only and provided, further, that the provisions of this act, Section 3101 et seq. of this title, shall not be construed to prohibit the use or requirement of disclosure of one's social security number if the use of the number is related to the Social Security Administration or benefits thereunder, or, subject to the provisions of Section 1–311.1 of Title 63 of the Oklahoma Statutes, to prohibit the use or requirement of disclosure of the social security numbers of the mother and father by the Vital Records Section of the State Department of Health in the administration of the issuance of birth records. . . ."

7. *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. United States Dept. of Veterans Affairs*, 135 F.3d 891, 902–904 (3rd Cir.1998); *Greidinger v. Davis*, 988 F.2d 1344, 1354 (4th Cir.1993).

8. Title 51 O.S.1991 § 24A.5 provides in pertinent part:

"All records of public bodies and public officials shall be open to any person for inspection, copying, and/or mechanical reproduction during regular business hours; provided:

¶ 6 Originally, social security numbers were intended for the exclusive use by the federal government for determining the amount of social security taxes to credit to a worker's account. Over time they have been appropriated and the numbers are used for tracking all kinds of personal information.[9] As the mass accumulation of information appears in computer data banks, use of these nine-digit numbers as universal identifiers is recognized as the origin of a serious manifestation of privacy concerns.[10] Release of social security numbers provides the opportunity for mischief. Redaction would bring the information request within the express language of 51 O.S.1991 § 24A.8,[11] and it would avoid concerns and mischief arising from the wholesale release of social security numbers.

... 2. Any reasonably segregable portion of a record containing exempt material shall be provided after deletion of the exempt portions ...

3. Any request for a record which contains individual records of persons and the cost of copying reproducing or certifying such individual record which is otherwise prescribed by state law, the cost may be assessed for each individual record, or portion thereof requested as prescribed by state law. Otherwise, a public body may charge a fee only for recovery of the reasonable, direct costs of document copying, and/or mechanical reproduction. In no instance shall said document copying fee exceed twenty-five cents ($0.25) per page for documents having the dimensions of eight and one half (8 1/2) by fourteen (14) inches or smaller, or a maximum of One Dollar ($1.00) per copied page for a certified copy. However, if the request is:

a. solely for commercial purpose ...
then the public body may charge a reasonable fee to recover the direct cost of document search...."

Section 24A.5 was amended effective November 1, 1996. However, the quoted portions of the statute remain substantially unchanged.

9. *Greidinger v. Davis*, see note 7 at 1351–52, supra.

10. *Id.*

11. Title 51 O.S.1991 § 24A.8, see note 1, supra.