Dear Representative Reynolds:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May the Oklahoma Ethics Commission or any state agency promulgate rules or make policy and procedures which conflict with the Oklahoma Open Records Act?
 2. May the Ethics Commission refuse to allow persons with personal copiers, computers, scanners, etc. into the Ethics Commission's office to inspect, copy and/or mechanically reproduce requested documents? Included in this question is the issue of electricity used while copying documents.
 3. In responding to an open records request, must the Ethics Commission or other State agencies supply the original document for inspection, copying and mechanical reproduction?
 4. In light of 74 O.S. 2001, § 18b[74-18b], must the Attorney General issue an official Opinion when the question asked involves an issue which is pending before a court of law?
 BACKGROUND
The Oklahoma Ethics Commission ("Commission"), under its constitutional rulemaking powers discussed below, instituted a rule requiring all candidate or campaign committees receiving or spending more than $20,000 to file reports electronically beginning July 1, 2006. 74 O.S. Supp. 2006, ch. 62, app. R. 257:10-1-9(d)(3). Before the rule was enacted such records were filed in paper form. Over a two-day period during the interim after adoption of the above rule but before it became effective, an individual brought a large photocopier on a 2' × 4' wheeled cart into the Commission offices, plugged it into an electrical outlet near a sink used by Commission employees and proceeded to make copies of Commission records. In the process, at least one document became temporarily misplaced and several documents were returned to the Commission staff in disorder, with some pages inverted and page numbers out of order. Several pages were badly wrinkled from having been caught or misfed in the copier. The space taken up by the copying machine interrupted traffic flow through the relatively small office.
At a public meeting shortly thereafter, the Commission adopted the following policy: (1) authorizing staff to put up a sign indicating certain office areas are restricted to staff only, (2) requiring persons wanting to review or copy records to request such materials from the staff who then make any requested copies, and (3) authorizing the staff to prevent personal copiers or electronic devices from being brought into the office to be used to copy Commission records. See Minutes of Regular Meeting ofthe Ethics Commission, May 12, 2006, p. 21. As a result of this action, the first three questions were asked. To answer these questions a review of the Open Records Act and the powers of the Commission are required.
 THE OPEN RECORDS ACT
The Oklahoma Open Records Act ("Act"), 51 O.S. 2001 Supp. 2006, §§ 24A.1-24A.29 "ensure[s] and facilitate[s] the public's right of access to and review of government records," subject only to certain limited exceptions. 51 O.S. 2001, § 24A.2[51-24A.2]. "All records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours" of the agency, except for certain materials "required by law to be kept confidential." 51 O.S. Supp. 2006, § 24A.5[51-24A.5], 24A.5(1).[1] Nothing in Article XXIX of the State Constitution creating the Ethics Commission indicates Commission records are not to be public records. Thus as a public body the Commission is subject to the requirements of the Act, just as are all other state agencies. 51 O.S. Supp. 2006, § 24A.5[51-24A.5]. The limited circumstances under which certain records of the Commission must be kept confidential and not made open to public inspection are discussed in the next section.
 THE OKLAHOMA ETHICS COMMISSION
The Commission was created pursuant to the Oklahoma Constitution, Article XXIX, Sections 1-7. The Commission acts in accordance with statutes at 74 O.S. 2001 Supp. 2006, §§ 4248-4259, and constitutionally mandated rules. OKLA. CONST. art. XXIX, § 3(A)-(C). Commission rules, being constitutionally based, "have no less weight than statutes." Ethics Comm'n v. Keating,958 P.2d 1250, 1259 (Okla. 1998); see Ethics Comm'n v.Cullison, 850 P.2d 1069, 1076 (Okla. 1993). Newly approved, modified or repealed rules of the Commission are subject to disapproval by joint resolution of the Legislature and subsequent veto by the Governor. OKLA. CONST. art. XXIV, § 3(C). But if rules are adopted or amended by the Commission, tendered to the Legislature and not expressly disapproved, they become law. Id.
Rules of the Commission are set out at 74 O.S. 2001 Supp. 2006, ch. 62, app. R. 257:1-1-1-257:30-1-9 ("Commission Rules"). Actions and records of the Commission which are confidential and not open for public inspection are set out at 74 O.S. Supp. 2006, ch. 62, app. R. 257:30-1-6(a). Generally, the materials held confidential relate to ongoing investigations, deliberations of the Commission, investigatory work product, certain communications with the Chief Justice of the Supreme Court regarding disqualification of a Commission member and private reprimands for inadvertent violations. Id. As earlier noted, except for these specific legislatively prescribed exemptions, the records of the Commission are subject to the requirements of the Act, just as are the records of other state agencies and commissions. Because of its broad public policy underpinnings set out in Section 24A.2 in Title 51, we believe the Act applies to all public bodies and officials, save only those listed in Section 24A.3(2).[2]
Neither the Commission nor any other state agency is authorized to adopt rules or policies that are inconsistent with provisions of state law or in excess of statutory authority granted the agency. Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980). Adoption of unlawful or improper policies that do not rise to the level of rulemaking are also not authorized. Id. at 405-06.
 COMMISSION RULES ON OPEN RECORDS
In 2005 the Ethics Commission amended 74 O.S. Supp. 2004, ch. 62, app. R. 257:10-1-1, which recognizes the right of the public to have prompt access to publicly disclosed information under its jurisdiction, stating:
 The rules of this chapter have been adopted for the purpose of complying with the provisions of the Oklahoma Constitution, Article XXIX, Section 3(A). The purpose of this chapter is to set standards for ethical conduct for campaigns for elective state office and for campaigns for initiatives and referenda. The Commission recognizes the importance of immediate public access to publicly disclosed information. Accordingly, the Commission has implemented a system to require certain campaign finance statements and reports to be electronically filed through Internet access.
Id. (emphasis added). Since the amended rule was not disapproved by the Legislature it had the force of law at the end of the 2006 legislative session. OKLA. CONST. art. XXIX, § 3(C).
Further, in 2005, the Commission adopted an amended rule referred to above, relating to filing of statements and reports by candidate committees on the Internet, which in pertinent part provides:
 (3) The treasurer or, in the treasurer's absence, the deputy treasurer of a committee shall file, in a timely manner, the appropriate reports or statements on the forms prescribed by the Commission. Filing statements and reports by Internet access only shall be required, beginning July 1, 2006, of a candidate committee which has exceeded $20,000 in contributions or expenditures during an active campaign or a non-candidate committee which has exceeded $20,000 in contributions or expenditures during the current or previous calendar year.
74 O.S. Supp. 2006, ch. 62, app. R. 257:10-1-9(d). Thus, after July 1, 2006, all candidate funding reports involving more than $20,000 are required to be filed electronically on the Internet, thus allowing access by the public through the Commission's web site.[3] In addition, the Commission has put all campaign reports filed after January 1, 2006 involving less than $20,000 on its web site,[4] although it is not presently required by any Commission rule. Thus, as of July 1, 2006, persons wanting to examine or copy records of campaign contribution and spending activities filed with the Commission may have ready access to such materials over the Internet. It is our understanding that three computer terminals and a printer are now available at the Commission's offices in the public waiting area for persons to retrieve records electronically and print copies. But what of the Commission's recently adopted policy effectively restricting certain office areas to the public, restricting access to original documents and restricting use of personal copiers by the person wanting copies of paper records?
 FORMAT AND RETRIEVAL OF RECORDS UNDER THE ACT
Your second question relates primarily to the means of retrieval of records of an agency or commission under the Act. When a person walks into a government agency and asks for a particular record, must an employee of the agency be responsible for finding the pertinent record and making a suitable copy for the requester, or may the requester make his or her own copies using a personal imaging device such as a digital camera, scanner or photocopier?
As early as 1944, long before our present Act became law, the Oklahoma Supreme Court in State ex rel. Research Institute v.Nix, 155 P.2d 983 (Okla. 1944) viewed the right of citizens and taxpayers to inspect public records as also including the right to "take copies." Id. at 983. This principle, reiterated in Attorney General Opinions 66-292, 76-373 and 80-207, is embodied in the present day Act where it provides, "All records of public bodies and public officials shall be open to any person forinspection, copying, or mechanical reproduction during regular business hours[.]" 51 O.S. Supp. 2006, § 24A.5[51-24A.5] (emphasis added).
The Act does not specify the means of copying, nor does it specify who is to copy the requested material. The last sentence of Section 24A.2 states, "Except as may be required by other statutes, public bodies do not need to follow any procedures for providing access to public records except those specifically required by the Oklahoma Open Records Act." Id.
Nowhere in the Act does the law prohibit requesters of records from making copies of such records themselves, nor does it require that copies of the requested documents must be made by an employee of the public body. For years, companies or individuals have made manual notes and sometimes even microfilm of information in public records, such as recorded land title instruments. See Am. First Abstract Co. v. W. Info. Sys., Inc.,735 P.2d 1187, 1188-89 (Okla. 1987).
A digital camera or an electronic scanner is a copying device, as are a pen and paper or a photocopy machine. As early as 1987, the Oklahoma Supreme Court recognized "copies" under the Act might include microfilm images or computer-compatible data. Seeid.; Merrill v. Okla. Tax Comm'n, 831 P.2d 634, 641 (Okla. 1992). More recently, the court held that a corporation seeking records of the Department of Corrections was entitled to those materials in a magnetic tape format, where the Department already had the records in such format. Transp. Info. Serv., Inc. v.State ex rel. Okla. Dep't of Corr., 970 P.2d 166, 171-72 (Okla. 1998).
Security of the original documents is a separate, valid issue that must also be considered. A public body may "establish reasonable procedures which protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions." 51 O.S. Supp. 2006, § 24A.5[51-24A.5](5); seeTransp. Info. Serv., 970 P.2d at 169, 172. Such protection of public records might reasonably include limiting access to original records by the public or limiting public access to work areas of agency personnel.
If persons are able to make their own copies from agency documents, what is to prevent accidental (or intentional) loss, damage or destruction of the originals? Where an agency has a duty to keep records, common sense dictates there is also a duty to keep the records organized, safe and legible, so they may be available to all who need them.[5] When documents are being placed in, or on, an electronic or mechanical copying device, the possibility always exists that such documents could be damaged or misplaced in such a process. Damage or loss of documents could clearly result in the disruption of the essential functions of a public body. 51 O.S. Supp. 2006, § 24A.5[51-24A.5](5).
We conclude it is altogether reasonable and proper for a public body whose records are being examined or copied by a citizen to have an agency employee be involved in this process. Supervision of inspection or copying of records becomes particularly crucial when old, fragile paper records are involved, or where the records are in an electronic format that is susceptible to modification or deletion. Careless treatment of such records could result in loss of, or damage to, irreplaceable materials.
Whether supervising a citizen's examination or copying of records, or restricting access to an agency personnel work area, is necessary in a particular situation would involve the exercise of discretion by agency officials, and would depend on the pertinent facts and circumstances. Thus, we cannot provide an opinion on such fact-dependent questions. 74 O.S. 2001, § 18b[74-18b](A)(5).
If a person copies a record using his or her own personal recording device we find no statutory authority for the agency maintaining such records to charge a fee for such service. However, if the agency is requested to provide copies, it may charge in accordance with schedules provided by law.[6] In the case of agencies where no schedule of fees for providing copies is specified by law, charges per page are set out in Section 24A.5(3) of the Act, namely: (a) twenty-five cents per page for records 8 ½ inches by 14 inches or smaller, (b) one dollar per page for certified copies, and (c) "a reasonable fee to recover the direct cost of record search and copying" where the request is for commercial purposes, or where the request would cause excessive disruption of the essential functions of the office. Such "fees shall not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." Id.
As discussed earlier, a public body must provide prompt, reasonable access to its records but may establish reasonable procedures which protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions. Such procedures might, for instance, include limiting copying devices to battery powered, hand-held devices, particularly where public space is limited. The Act contains no provisions requiring a public body to provide a source of electricity to power a copying or electronic device of the person requesting records. Under Section 24A.5(3) of the Act an agency may add charges to recover costs over and above those of its day-to-day operations. See A.G. Opin. 96-26, at 81-82. What restrictions on copying devices or charges for services provided in a given situation would be sufficient for a public body to, as stated in Section 24A.5(5), "protect the integrity and organization of its records and . . . prevent excessive disruptions of its essential functions" is a fact question beyond the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 DUTY TO MAINTAIN RECORDS IN A PARTICULAR FORMAT
There are no Oklahoma statutes or laws generally requiring public agencies or public officers to keep records in an electronic format. As provided in 12A O.S. 2001, § 15-117[12A-15-117]:
 Each governmental agency of this state, in cooperation with the Archives and Records Commission, shall determine whether, and the extent to which, it will create and retain electronic records and convert written records to electronic records.
Id. However, if a governmental agency elects to keep its records in electronic format we believe that such agency must provide records under the Act in this format if so requested.See Transp. Info. Serv., 970 P.2d at 171; A.G. Opins. 05-21, at 109-11; 05-3, at 12-13; 85-36, at 85-86. Where no such election has been made to put agency records into electronic or computer format, we do not believe the agency is required to convert its paper records to some particular electronic format for the convenience of a person requesting records, although it may agree to do so for an appropriate fee. See Merrill, 831 P.2d at 641.
 ORIGINAL DOCUMENTS
In your third question, you ask whether the Commission must supply the "original" document to the person for purposes of examination and copying. For purposes of this Opinion, we interpret "original" to mean an instrument or document bearing original signatures and/or seals as opposed to a photocopy or duplicate of such document. We do not interpret the Act as requiring the Commission or any other agency to provide an "original" for examination or copying. Title 67 O.S. 2001, § 301[67-301](A)(1) deems a public body's duplicated records to be original records if the records are duplicated in a manner acceptable to the State Archives and Records Commission. See A.G. Opin. 05-03, at 12. While original writings are preferable as evidence to prove the content of a writing (12 O.S. Supp. 2006, § 3002[12-3002]) duplicates are admissible as evidence unless a "genuine question is raised as to the authenticity of the original." Id. § 3003(1). Further, copies of public records are admissible as evidence where they bear an official certification that it is a true and correct copy of the original. Id. § 3005. Thus, we conclude production of an "original" document is not required for purposes of the Act. See A.G. Opin. 95-78, at 191-92. Whenever possible it would appear reasonable for a public body to provide a copy of a document (rather than the original itself) to persons wanting to examine or reproduce it, to avoid the possibility of an original document inadvertently being lost, damaged or defaced. 51 O.S. Supp. 2006, § 24A.5[51-24A.5](5).
 ATTORNEY GENERAL OPINIONS ON MATTERS PENDING IN COURT
You last ask whether the Attorney General must issue an opinion on a question asked, despite the fact that the same issue is pending before a court of law. Title 74 O.S. 2001, § 18b[74-18b](A)(5) provides that one of the duties of the Attorney General is:
 To give an opinion in writing upon all questions of law submitted to the Attorney General by the Legislature or either branch thereof, or by any state officer, board, commission or department, provided, that the Attorney General shall not furnish opinions to any but district attorneys, the Legislature or either branch thereof, or any other state official, board, commission or department, and to them only upon matters in which they are officially interested[.]
Id. As the State's chief law officer the Attorney General is entrusted with the duty of providing legal guidance to public officers and advising them on questions of law which relate to their official duties. With the exception of an Attorney General's Opinion that an act of the Legislature is unconstitutional, an Attorney General's Opinion is binding upon the state officials whom it affects. Branch Trucking Co. v.Okla. Tax Comm'n, 801 P.2d 686, 690 (Okla. 1990). Public officers have the duty to follow Attorney General Opinions until they are judicially relieved of compliance. State ex rel. Fentv. State ex rel. Okla. Water Res. Bd., 66 P.3d 432, 441 (Okla. 2003).
As to matters involving pending litigation the Attorney General is also authorized to:
 [I]nitiate or appear in any action in which the interests of the state or the people of the state are at issue, . . . and when so appearing in any such cause or proceeding, the Attorney General may, if the Attorney General deems it advisable and to the best interest of the state, take and assume control of the prosecution or defense of the state's interest therein[.]
74 O.S. 2001, § 18b[74-18b](A)(3). Thus, the Attorney General is vested with broad, general authority to control litigation in which the State or its people have an interest. As later discussed in this section, we believe this ability to control the progress of litigation would include the power to decline to render an Attorney General's Opinion until the pertinent litigation is complete.
Although the Attorney General is an officer of the State exercising executive authority (OKLA. CONST. art. VI, § 1(A)), in rendering opinions the Attorney General acts in a quasi-judicial capacity. State ex rel. York v. Turpen, 681 P.2d 763, 767
(Okla. 1984); Draper v. State, 621 P.2d 1142, 1147 (Okla. 1980). The term "quasi-judicial" implies that the Attorney General is acting, to a degree, in the nature of a court or exercising some of the functions normally performed by a court.See BLACK'S LAW DICTIONARY 1411 (8th ed. 1968); see Turpen,681 P.2d at 767.
While the Attorney General when acting in a quasi-judicial capacity is not a "court" (see State ex rel. Tharel v. Bd. ofComm'rs, 107 P.2d 542, 549 (Okla. 1940)), the exercise of judicial discretion must be utilized. Id. Such a "cross-over" between functions of the executive and judicial branches of government is allowed in some instances because the functions of government cannot always be separated into "water tight compartments." In re Okla. Dep't of Transp., 64 P.3d 546, 550
(Okla. 2002).
Thus in rendering opinions, the Attorney General is required to exercise judicial discretion in the matters coming to his attention. Tharel, 107 P.2d at 549. One of the requirements of a court or a tribunal acting in a quasi-judicial capacity is to determine if a matter is "justiciable." That is, the claim or matter to be decided must, "(a) [be] definite and concrete, (b) concern legal relations among parties with adverse interests and (c) [be] real and substantial so as to be capable of adecision granting or denying specific relief of a conclusivenature." Dank v. Benson, 5 P.3d 1088, 1091 (Okla. 2000) (footnote omitted). Under the duties of the Attorney General set out in Title 74 of the Oklahoma Statutes, we conclude the Attorney General is not required to render opinions on hypothetical or abstract questions, notwithstanding the broad language of 74 O.S. 2001, § 18b[74-18b](A)(5).
The effect of an Attorney General's Opinion in Oklahoma is different than it would be in many other states. In most jurisdictions, opinions or advice of the attorney general is advisory only, i.e., non-binding on the officials to whom it is addressed. See 7 AM. JUR. 2D Attorney General, § 11 (1997). In such jurisdictions attorney general opinions have in no sense the effect of judicial utterances. This is in sharp contrast to the role of the Attorney General in Oklahoma, where the Attorney General's opinion is binding on state officials to whom it applies, except only to the matter of constitutionality of statutes. Fent, 66 P.3d at 441.
Given the binding, quasi-judicial nature of Attorney General Opinions in Oklahoma another principle applied by courts becomes important, that of comity. "Judicial comity is not a rule of law, but one of practical convenience and expediency" under which courts will refrain from interfering with actions in another court already underway on the same subject matter. Clampitt v.Johnson, 359 P.2d 588, 592 (Okla. 1961). A court should ordinarily decline to entertain jurisdiction of a matter where there is an action already pending in a convenient and competent forum of another jurisdiction to which the parties may apply, and where jurisdiction by a second court might lead to confusion and conflicting orders. Moody v. Branson, 136 P.2d 925, 928 (Okla. 1943). Courts ordinarily agree the authority that first acquires jurisdiction and takes action on a matter has the right to do so to the exclusion of the other, until the authority first acquiring jurisdiction has exhausted its process. Among other reasons, such comity avoids confusion and conflict and promotes judicial economy. See Perry v. Harper, 307 P.2d 168, 171 (Okla. Crim. 1957) (citation omitted).
Under the principles of judicial comity stated above, we conclude that to promote judicial economy and to prevent inconsistencies in the outcome, if litigation is already underway in a court of competent jurisdiction on a matter that is the subject of a request for an opinion of the Attorney General, the Attorney General may exercise restraint and not render an opinion unless or until the court has finished its work. To do otherwise could result in a waste of legal resources. Moreover, for the Attorney General to render an opinion while a court is considering the same matter raises serious constitutional questions under our separation of powers requirements in OKLA. CONST. art. IV, § 1. If the Attorney General's Opinion resulted in a particular legal conclusion and the court proceedings held a contrary result was appropriate, the court's ruling would effectively overrule the Attorney General Opinion, as the court in Fent and other similar cases has held. See Fent,66 P.3d at 441. As a result of a final court judgment, the state official or state agency would be relieved of the obligation to follow the Attorney General's advice. Thus, we conclude the Attorney General is not required to render an opinion on a matter where litigation is pending on the same subject.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Oklahoma Ethics Commission or any other public body may not make rules, policy or procedures that conflict with the Open Records Act ("Act") or its enabling legislation. OKLA. CONST. art. XXIX; 74 O.S. Supp. 2006, ch. 62, R. 257:10-1-1; 51 O.S. 2001 Supp. 2006, §§ 24A.1-24A.29; Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980).
 2. The Act requires public bodies, including the Ethics Commission, to allow the public to have access to records of public bodies and public officials for inspection, copying and/or mechanical reproduction during regular business hours, except for certain materials required by law to be kept confidential. 51 O.S. 2001 Supp. 2006, §§ 24A.2, 24A.5.
 3. The particular means of copying or reproducing records is not specified in the Act. A public body may establish reasonable procedures to protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions. 51 O.S. Supp. 2006, § 24A.5[51-24A.5](5). The use by a requesting person of his or her own copying equipment is not prohibited by the Act and must be permitted by the public body as long as such person's copying process does not unreasonably disrupt the essential functions of the public body or result in defacing or loss of such records. 51 O.S. Supp. 2006, § 24A.5[51-24A.5](5); see Transp. Info. Serv., Inc. v. State ex rel. Okla. Dep't of Corr., 970 P.2d 166, 172 (Okla. 1998).
 4. Whether the means chosen by a public body to protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions is reasonable and in compliance with the Act involves questions of fact which cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 5. There is no requirement that the Ethics Commission or other public body supply an original document to the person requesting such record for inspection, copying and mechanical reproduction, as long as the copy furnished is a true and correct copy of the original. 51 O.S. Supp. 2006, § 24A.5[51-24A.5](5); 12 O.S. Supp. 2006, §§ 3002[12-3002], 3003, 3005; 67 O.S. 2001, § 301[67-301](A)(1).
 6. The Attorney General is not required to issue an opinion on a matter that is in litigation. 74 O.S. 2001, § 18b[74-18b](A)(3), (A)(5); State ex rel. York v. Turpen, 681 P.2d 763, 767 (Okla. 1984); Clampitt v. Johnson, 359 P.2d 588, 592 (Okla. 1961); Moody v. Branson, 136 P.2d 925, 928 (Okla. 1943); Okla. Const. art. IV, § 1.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] For example, records required by law to be kept confidential include privileged attorney-client communications, records from executive sessions, personal information within drivers' records and certain medical information (51 O.S. Supp. 2006, § 24A.5[51-24A.5](1)(a)-(d)); some personnel records (id. § 24A.7); certain law enforcement records (id. § 24A.8(C)-(G)); personal notes of public officials prior to official action by their agency (51 O.S. 2001, § 24A.9[51-24A.9]); market research and marketing plans of the Oklahoma Medical Center (id. § 24A.10a); litigation and investigatory files of the Attorney General or district attorneys (id. § 24A.12); certain educational materials pertaining to individual students (51 O.S. Supp. 2006, § 24A.16[51-24A.16](A)) and other materials specifically listed later in the Act or other statutes. This list is not complete but for illustration only.
[2] As provided in Section 24A.3(2) a "`public body' does not mean judges, justices, the Council on Judicial Complaints, the Legislature, or legislators[.]"
[3] See www.ethics.state.ok.us.
[4] See letter from Marilyn Hughes, Executive Director, State of Oklahoma Ethics Commission, to Lynn Rogers, Assistant Attorney General (Aug. 28, 2006) (on file with the office of the Oklahoma Attorney General).
[5] For instance, county clerks have a duty to keep their records in a safe condition and protect them from damage, defacement or loss. 19 O.S. 2001, § 284[19-284]; see also, In reRichardson, 184 P.2d 642, 645 (Okla. 1947); Nix,155 P.2d at 985 (recognizing that it is reasonable for a county clerk to assign an employee to supervise inspection of documents by a citizen, particularly where large numbers of documents are involved). If it is reasonable for a county clerk to supervise the inspection of records by a requester it is eminently more reasonable for a county clerk to have an employee supervise thecopying of records. By analogy these principles apply to all public bodies under the Act.
[6] See, e.g., 28 O.S. Supp. 2006, § 31[28-31] (court clerks); id.
§ 32 (county clerks); 28 O.S. 2001, § 43[28-43] (county treasurers); 28 O.S. 2001, § 60[28-60] (county assessors); 28 O.S. Supp. 2006, § 111[28-111] (secretary of state).