Frank E. MARLEY, Jr., Administrator of the Department of Securities, and the Oklahoma Securities Commission, Individually and jointly, Petitioners,

v.

The Honorable Joe CANNON, District Court Judge, Judicial District Number 7, and Lentz and Associates, Gerry Lentz, Individually, and Dalton E. Nelson, Individually, Respondents.

Frank E. MARLEY, Jr., Administrator of the Department of Securities and the Oklahoma Securities Commission, Individually and jointly, Appellants,

v.

LENTZ AND ASSOCIATES, Gerry Lentz, Individually, and Dalton E. Nelson, Individually, Appellees.

Nos. 53928, 53991.

Supreme Court of Oklahoma.

Oct. 7, 1980.

Dennis S. Boxeur, James V. Barwick, Associate Gen. Counsels, Oklahoma Dept. of Securities, Oklahoma City, for petitioners and appellants.

Jerry L. Mash, Oklahoma City, for respondents and appellees.

IRWIN, Vice Chief Justice.

This appeal involves the authority of the Oklahoma Securities Commission and the Administrator of the Oklahoma Department of Securities to issue cease and desist orders; and the jurisdiction of the district court to determine whether or not the business activities of an entity fall within the purview of the Oklahoma Securities Act.

Lentz and Associates (appellees) are engaged in the mortgage and loan business. According to appellees, they render two distinct services to desirous borrowers. One involves the preparation of a professional loan package in an effort to make their clients' loan request attractive to prospective lenders. The other service involves the actual attempt to obtain loans for their clients. Appellees receive an advance fee for at least the loan package preparation. Whether any part of the advance fee constitutes compensation for obtaining loan commitments is not clear. Appellees contend that the advance fee is received for the loan package preparation only, and that a separate mortgage brokerage fee is received when and if a loan commitment is obtained for a client.

The Administrator of the Oklahoma Department of Securities has taken a different view of appellees' business activities. After receiving complaints in regard to alleged violations by appellees of the Oklahoma Securities Act, 71 O.S.1971, § 1 *et seq.* (Act), the Administrator conducted a private investigation of their business activities pursuant to section 405(a) of the Act.[1] In January, 1979, the Administrator issued and served upon appellees a "Summary Cease and Desist Order" and a hearing was held before the Administrator at the request of appellees. On April 5, 1979, the Administrator issued a final cease and desist order which included findings of fact and conclusions of law. He concluded that appellees were selling unregistered securities in the form of advanced fees charged to prospective borrowers in consideration for the promise to loan money in the future, or to provide lenders of money at a future date. Specifically, the alleged advance fee loan contracts were found to be "evidence of indebtedness" as defined in 71 O.S.Supp. 1976, § 2(20)(F) and as interpreted in *United States v. Austin*, 462 F.2d 724 (10th Cir. 1972), and *Securities Commission of North Dakota v. McGovern*, CCH Blue Sky Law Reporter, ¶ 71,438 (D.C.N.D.1978).

The Administrator found that it would be in the public interest to prohibit appellees from selling unregistered securities and ordered them "to Cease and Desist the solicitation, offer and/or sale of securities within the State of Oklahoma until such time as registration of the insurer, agents, and approval of the sales literature have been accomplished."

Appellees sought review by the Oklahoma Securities Commission of the Administrator's order pursuant to 71 O.S.1971,

---

1. 71 O.S.Supp.1979, § 405(a) provides:

"The Administrator in his discretion (1) may make such public or private investigations within or outside of this state as he deems necessary to determine whether any person has violated or is about to violate any provision of this act or any rule or order hereunder, or to aid in the enforcement of this act or in the prescribing of rules and forms hereunder, (2) may require or permit any person to file a statement in writing, under oath or otherwise as the Administrator determines, as to all the facts and circumstances concerning the matter to be investigated, and (3) may publish information concerning any violation of this act or any rule or order hereunder."

§ 409(a)[2], and a de novo hearing before the Commission was scheduled for April 19, 1979. After appellees requested and were allowed two continuances, the Commission hearing was reset for June 21, 1979. On that day, however, appellees were granted a temporary restraining order by the district court prohibiting further action by the Administrator or Commission in regard to appellees' activities. At the subsequent show cause hearing the Administrator requested the court to dismiss the action for lack of subject–matter jurisdiction. The court denied this request and entered a permanent injunction against the Administrator and the Oklahoma Securities Commission, prohibiting the use of cease and desist orders without a prior administrative hearing. It also enjoined the Administrator and the Commission "from asserting any authority over, or interfering with," the appellees' activities. There remains pending before the trial court appellees' action seeking a judicial determination that their business activities do not fall within the purview of the Oklahoma Securities Act.

The Administrator and Commission filed with this court an Application to Assume Original Jurisdiction (Case No. 53,928), seeking a Writ of Prohibition to prevent the district court from exercising any further jurisdiction in this matter and to order a remand of this case to the Commission for further proceedings. Subsequently the Commission perfected an appeal from the granting of the permanent injunction (Case No. 53,991) in reference to the issuance of cease and desist orders. These two actions are consolidated here for disposition.

The Commission contends that if the district court's assumption of jurisdiction was proper, the court abused its discretion in granting injunctive relief. Three arguments are made in support of this position: first, that the district court lacked statutory authority to review the agency's actions; second, the failure of appellees to exhaust their administrative remedies deprived the court of jurisdiction; and finally, that the equitable prerequisites to injunctive relief were not met. Appellees contend that a district court may properly enjoin the actions of a state agency where those actions are *ultra vires,* and that the court correctly determined the actions of the Administrator to be beyond the scope of his authority.

■ While the Oklahoma Securities Act does not provide for review of an agency action by a district court,[3] the equitable jurisdiction of a district court is not dependent upon specific statutory authorization. *State ex rel. Day v. Southwest Mineral Energy, Inc.,* Okl., 617 P.2d 1334 (1980). However, where a special remedy is provided by statute, the special remedy is exclusive and a party may not resort to a court of equity to enjoin the actions of a public officer unless the officer is acting without authority of law. *State ex rel. Boatman v. District Court of Okmulgee County,* 122 Okl. 69, 250 P. 1023 (1926).

2. 71 O.S.1971, § 409(a) provides:

"Any person aggrieved by final order of the Administrator may obtain a review by the Commission by filing with the Administrator, within fifteen days after the entry of the order, a written petition praying that the order be modified or set aside in whole or in part and stating his ground therefor. The application and petition shall within sixty days be heard de novo by the Commission in banc. The applicant may offer evidence and it shall be the duty of the Administrator to offer such evidence as he relied upon in the entry of his order and such further evidence as he may deem relevant. Upon the written request of the party on whose behalf the appeal is brought, or upon his own motion, the Administrator shall cause complete stenographic notes to be taken. If requested by the appealing party, the cost of taking and transcribing such notes shall be borne by the said appealing party. If such notes are taken upon the motion of the Administrator, the cost shall be borne by the Commission. The Commission or a majority thereof shall make such order as is deemed proper, just, and equitable."

3. The Act provides a two-step appeal from actions by the Administrator; first, under § 409(a), id., an appeal is made to the Commission; second, under 71 O.S.1971, § 409(b) and certain provisions of the Administrative Procedures Act, 75 O.S.Supp.1979, § 318(2), a final order of the Commission may be appealed to this court.

There is no express authority within the Oklahoma Securities Act for the issuance of cease and desist orders. The Act does, however, expressly provide for the enforcement of its provisions by an action in district court.[4] But the Commission contends that the Administrator's authority to issue cease and desist orders is derived by implication from 71 O.S.1971, § 410(a), which provides in part that "[T]he Administrator may from time to time make, amend, and rescind such rules, forms, and *orders* as are necessary to carry out the provisions of this act..." (emphasis added).

■ We recognize that generally, an officer or agency has, by implication and in addition to the powers expressly given by statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers. *Oklahoma Tax Commission v. Fortinberry Co.*, 201 Okl. 537, 207 P.2d 301 (1949). However, an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority. *Boydston v. State*, Okl., 277 P.2d 138 (1954); *Adams v. Professional Practices Commission*, Okl., 524 P.2d 932 (1974).

In *Board of Examiners in Veterinary Medicine v. Tubbs*, Okl., 307 P.2d 830 (1957), we held that the Board could maintain an action in its own name to enjoin the unlicensed practice of veterinary medicine even though the act regulating such practice did not expressly authorize such procedure. After recognizing the rule announced in *Fortinberry, supra*, and after examining the applicable regulatory act, the court found that to deny the Board the power to seek injunctions against unlicensed practice "would not only be inconsistent with but directly contrary to what appears to be the

principal purpose, or object, of the Act. It would also render passage of the Act an ineffective means of accomplishing said purpose; and from a practical standpoint, would largely emasculate the other enforcement powers specifically given the Board."

The issuance of cease and desist orders by the Administrator or the Commission is not a necessary practice in effectuating the purposes of the Oklahoma Securities. Certainly the necessity found to exist in *Tubbs, supra*, is not present in this case. Indeed, the Commission concedes that a cease and desist order issued by the Administrator is legally nothing more than a warning, since the directive it contains could only be enforced by a judicial proceeding under 71 O.S.1971, § 406.[5] The principal value which the Commission claims for its orders is the convenience derived from a self–promulgated order, as opposed to one procured in a district court. Apparently the Administrator and the Commission are of the view that a document which has the solemn and authoritative appearance of a legally binding injunctive order secures substantially the same compliance as an order which cannot in fact be disregarded with impunity.

■ The findings, conclusions and the cease and desist order, all contained in the same document are styled "FINDINGS OF FACT, CONCLUSIONS OF LAW, OPINION AND ORDER TO CEASE AND DESIST." It is executed by the Administrator, has the official seal of the Commission, and has the appearance of a legally binding judicial document. The order does not merely advise the appellees that their activities fall within the purview of the Securities Act or that they are in violation of the Act, but it is clearly prohibitory. The Administrator and the Commission do not have the statutory authority to issue such an order, *with or without an administrative*

---

4. 71 O.S.1971, § 406

5. The Oklahoma Securities Act is derived from and is substantially similar to the Federal Securities Act. For an examination of the relationship between cease and desist power and other enforcement powers now available to the SEC, see Hazen, Administrative Enforcement: "An

Evaluation of the Securities and Exchange Commission's Use of Injunctions and Other Enforcement Methods," 31 Hastings L.J. 427 (1979) and Mathews, The SEC and Civil Injunctions: "It's Time to Give the Commission an Administrative Cease and Desist Remedy." 6 Sec.Reg.L.J. 345 (1979).

*hearing*, and the authority to do so cannot be fairly implied. The district court correctly enjoined the Administrator and the Commission from issuing such orders.

The district court temporarily enjoined the Administrator and the Commission from asserting any authority over, or interfering in any manner whatsoever with the activities of the appellees pending a hearing on the merits. By this action, the district court in effect held that it, and not the Administrator or the Commission, should determine, in the first instance whether the appellees' activities fell within the purview of the Oklahoma Securities Act. In other words, the district court will determine the statutory authority of the agency, as it relates to a particular commercial practice, in a proceeding collateral to a statutorily established administrative process dealing with precisely the same subject matter. And the issues are not purely legal as there is a substantial dispute concerning the factual circumstance by which appellees conduct their business activities.

It is an axiom of administrative law that administrative remedies must be exhausted before resort to the courts will be permitted. In *Oklahoma Public Welfare Commission v. State ex rel. Thompson*, 187 Okl. 654, 105 P.2d 547 (1940) we held:

"Where person whose social security assistance had been discontinued on recommendation of county assistance board, and whose application for rehearing and further investigation was refused by said board, failed to pursue the administrative appeal to the Public Welfare Commission required by the Oklahoma Social Security Act, trial court erred in issuing writ of mandamus against the Public Welfare Commission to resume payments."

Our holding in *Thompson* was based upon a conclusion "that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." This theory has been followed consistently by this court.[6] In *Martin v. Harrah Independent School District*, Okl., 543 P.2d 1370 (1976) we said:

"It has long been established in Oklahoma that exhaustion of statutory administrative remedies is a jurisdictional prerequisite for resort to the courts. [citations omitted] It is only where the administrative remedies are not adequate that the courts may take jurisdiction prior to actual exhaustion of administrative remedies, and then a strong showing is required as to the alleged inadequacy of a prescribed administrative remedy. [citations omitted.]

"The rule which requires exhaustion of administrative remedies, before one is entitled to relief for supposed or threatened injury, is a well settled rule of judicial administration to aid in the orderly administration of justice and to prevent transfer to the courts of duties imposed by law on administrative agencies. [citations omitted]"

In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), the NLRB had issued a complaint against Bethlehem charging unfair labor practices. After the case had been set for an administrative hearing, Bethlehem filed a bill in equity in federal district court to enjoin the holding of the hearing. It alleged that Board's authority did not extend to Bethlehem's operation because it was not related to interstate commerce, and that the hearing would cause irreparable damage not only by reason of direct cost and loss of time but also because of serious impairment of good will and harmonious relations existing between it and its employees. The district court's grant of the injunction was affirmed by the circuit court of appeals. On Writ of Certiorari the Supreme Court of the United States, after noting that Bethlehem did not claim the administrative hearing procedure would be illegal, found the district court

---

6. *Sanders v. Oklahoma Employment Security Commission*, 200 Okl. 366, 195 P.2d 272 (1948); *Speaker v. Board of County Commissioners*, Okl., 312 P.2d 438 (1957); *Hughes v. City of Woodward*, Okl., 457 P.2d 787 (1969); *Martin v. Harrah Independent School District*, Okl., 556 P.2d 1370 (1975); *Lincoln Income Life Insurance Co. v. Wood*, Okl., 556 P.2d 602 (1976); *Silver Griddle Co. v. City of Oklahoma City*, Okl., 570 P.2d 619 (1977).

" . . . is without jurisdiction to enjoin hearings because the power 'to prevent any person from engaging in any unfair practice affecting commerce,' has been vested by Congress in the Board and the Circuit Court of Appeals, and Congress had declared: 'This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.' The grant of that exclusive power is constitutional, because the Act provided for appropriate procedure before the Board and in the review by the Circuit Court of Appeals an adequate opportunity to secure judicial protection against possible illegal action on the part of the Board . . ." Id. 303 U.S. at 48, 58 S.Ct. at 462.

Allowing the district court to enjoin such hearings, the Court said, would be

" . . . at war with the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. That rule has been repeatedly acted on in cases where, as here, the contention is made that the administrative body lacked power over the subject matter." Id. 303 U.S. at 51, 58 S.Ct. at 463.

Despite the absolutist language in the *Bethlehem* case, the Court neither before nor after that decision required exhaustion of administrative remedies in every case where a challenge was made to the power of the agency to act at all.[7] Likewise, while state courts commonly assert the exhaustion requirement in absolute terms, exceptions to the exhaustion requirement have been recognized.

Our court recognized an exception in *Martin, supra,* with this language:

"The presence of constitutional questions coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury resulting from delay incident to following the prescribed procedure has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention. However, this rule is not one of mere convenience or ready application. Where the intent of the statute clearly requires administrative determination in advance of judicial action a strong showing is required, both of inadequacy of the prescribed procedure and of impending harm to permit short–circuiting of the administrative process. [citations omitted]"

■ , Title 71 O.S.1971, § 409 prescribes a procedure to obtain a review of an administrator's order by the Commission and sub–paragraph (b) provides for review by the Supreme Court of a final order of the Commission. Section 409 clearly requires the administrative procedures to be followed and exhausted before relief may be obtained in the courts. Appellees have attempted to short–circuit the entire administrative process by going directly to the district court.

At the time appellees sought injunctive relief in the district court there was a substantial dispute concerning their business activities and whether or not they were within the purview of the Oklahoma Securities Act. The factual dispute could have been clarified or resolved at the de novo appeal hearing before the Commission. The administrative remedies were clearly adequate. Although the trial court correct-

7. See and compare, *Gonzales v. Williams,* 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317 (1904) (exhaustion not required); *United States v. Sing Tuck,* 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917 (1904) (exhaustion required); *Prentis v. Atlantic Coast Line,* 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1919) (exhaustion not required); *Skinner & Eddy Corp. v. United States,* 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919) (exhaustion not required); *Allen v. Grand Central Aircraft Co.,* 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954) (exhaustion not required); *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (exhaustion not required); *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (exhaustion not required); *McGee v. United States,* 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971) (exhaustion required). See generally K. Davis, Administrative Law Text, § 20.02 (3rd Ed. 1972).

ly determined that neither the Administrator nor the Commission had the authority to issue cease and desist orders, the court erred in holding that it was the proper forum to determine whether or not appellees' business activities were within the purview of the Oklahoma Securities Act.

Application to Assume Original Jurisdiction granted in Case No. 53,928 and the trial court is prohibited from enforcing its order enjoining the Administrator and the Commission from asserting any authority over or interfering in any manner whatsoever with appellees' activities. District court enjoined from further proceeding in appellees' action for judicial determination that their business activities do not come within the purview of the Oklahoma Securities Act.

The trial court is affirmed in Case No. 53,991 in reference to its adjudication that neither the Administrator nor the Commission has the authority to issue cease and desist orders.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.