Dear Chancellor, Brisch
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
Under the authority of Article XIII-A of the OklahomaConstitution, or any other basis of law, do the Oklahoma StateRegents for Higher Education have the authority to award honorarydegrees to individuals deemed deserving of such distinctions?
¶ 1 The Oklahoma State Regents for Higher Education is a group of constitutionally-mandated officers decreed by law to oversee the State System of Higher Education. Okla. Const., ArticleXIII-A, Section 2. The Constitution provides, in this regard:
 The Regents shall constitute a coordinating board of control for all State institutions described in Section 1 hereof, with the following specific powers: (1) it shall prescribe standards of higher education applicable to each institution; (2) it shall determine the functions and courses of study in each of the institutions to conform to the standards prescribed; (3) it shall grant degrees and other forms of academic recognition for completion of the prescribed courses in all of such institutions; (4) it shall recommend to the State Legislature the budget allocations to each institution, and; (5) it shall have the power to recommend to the Legislature proposed fees for all of such institutions, and any such fees shall be effective only within the limits prescribed by the Legislature.
¶ 2 This express constitutional power has been augmented by the Legislature in statutory amendments passed through the years, and primarily presented currently in 70 O.S. 3201-70 O.S. 3223
(1981), as amended. 70 O.S. 3206 provides, in this regard, in pertinent part:
 As provided in Article XIII-A of the Constitution of Oklahoma, the State Regents shall constitute a coordinating board of control for all state educational institutions, with the following specific powers:
 (a) It shall prescribe standards of higher education applicable to each institution.
 (b) It shall determine the functions and courses of study in each of the institutions to conform to the standards prescribed.
 (c) It shall grant degrees and other forms of academic recognition for completion of the prescribed courses in all of such institutions.
* * *
 (m) Exercise all powers necessary or convenient to accomplish the purposes and objectives of Article XIII-A of the Constitution of Oklahoma.
¶ 3 The question that you present has been twice presented to the Attorney General before for examination. On December 12, 1941, in response to a letter transmitted by John Oliver, Administrative Officer for the State Regents, the Attorney General advised that neither the State Regents nor any of the individual institutions of the State System possessed the authority to confer such degrees. This answer was based upon a finding that:
 [W]e know of no law, either constitutional or statutory, empowering or authorizing any agency to confer an "honorary" degree upon a person who has not completed a course of study which, under prevailing rules and regulations, would entitle such person to receive such degree if he had actually completed such course of study. Not only does there appear to be an absence of any such legal authority to confer "honorary" or "unearned" degrees, but some of the language found in the foregoing quotations from Article XIII-A, Oklahoma Constitution, and Chapter 45, Title 70, Oklahoma Session Laws 1941, seems to imply that degrees shall only be granted "for completion of the prescribed courses of study."
A.G. Opin. Dec. 12, 1941, p. 4.
¶ 4 This latter reference in the opinion apparently was included to emphasize that the constitutional and statutory scheme approved by the people and the Legislature had no explicit, facial grant of authority to confer honorary degrees, and a parallel feeling that in the absence of such a statement, only those earned degrees specifically mentioned in the Constitution could be granted. This line of analysis was affirmed eight years later in a second opinion, this one issued on August 10, 1949, to R.T. Stuart, Chairman of the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges.
¶ 5 This reliance upon the terms of the Constitution that refer to earned degrees is misplaced and too narrowly restricts the field of analysis. Some years later, our Supreme Court reviewed the prerogatives of the State Regents, vis-a-vis those of the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, in Board of Regents For Oklahoma Agricultural andMechanical Colleges v. Oklahoma State Regents For HigherEducation, 497 P.2d 1062 (Okla. 1972). That case centered specifically around complaints raised by the A M Regents that the State Regents had no authority to unilaterally change the functions of one of the state institutions of higher learning, an institution then technically also under the control of the A M Regents for direct governance purposes.
¶ 6 In affirming the prerogatives of the State Regents in that area, the Court also noted a distinction to be drawn between the State Regents' authority over prescribing "standards of higher education" and their duties and powers to prescribe the "functions and courses of study" in the institutions to conform to those standards, and the coordinate power over earned degrees that may be offered for completion of such study programs. Id.
at 1065. See also, id. at 1075 (dissent by Barnes). In essence, the Court recognized that the Regents' duties and powers relative to these "standards of higher education" are somewhat broader than merely having the authority to prescribe certain course work and to control what types of earned degrees may be conferred upon students. Accord, Sipuel v. Bd. of Regents of Univ. ofOklahoma, 190 P.2d 437 (Okla. 1948).
¶ 7 It is well settled in this State that public officers possess not only those powers specifically granted to them by constitutional provision or by statute, but also those powers that are necessary for the due and diligent exercise of the authority expressly granted, or such as may be fairly implied therefrom. Marley v. Cannon, 618 P.2d 401 (Okla. 1980).
¶ 8 Under the terms of Article XIII-A, the grant of authority to the State Regents does not limit the Regents to exercising only those powers expressly enumerated in the Constitution relative to the awarding of earned degrees, or matters inherently tied in with such degrees. 70 O.S. 3206(m), above, recognizes that the State Regents have the power to do all things necessary and convenient to the effectuation of their constitutional prerogatives. Such functions include the coordination and oversight of activities related to the conferring of academic degrees, whether such recognition is for an academic honor conferred for completion of a prescribed course of study undertaken at one of the institutions in the State System, or whether it is awarded for activities deemed of comparable note, as regulated by State Regents' guidelines.
¶ 9 In this vein, it is noted that honorary degrees have been awarded by American colleges and universities since early colonial times. In 1692, Harvard, only fifty years after its founding, awarded the first such degree and thus began what has become a recognized function of degree-granting institutions of higher learning. Such degrees are today awarded by both public and private institutions of higher education, and this practice has increased as higher education has expanded. Almost 200 varieties of such degrees were awarded to approximately 50,000 recipients from 1870 to 1939 alone. Knowles, Handbook of Collegeand University Administration, at pp. 2-212, McGraw-Hill, New York City, 1970. A comprehensive history of the practice is contained in Epler, Honorary Degrees: A Survey of Their Use andAbuse, American Council on Public Affairs, Washington, 1943.
¶ 10 Not reviewed in any depth in either of the opinions referred to above is the question of the proper role of the State Regents in overseeing the State System's standards of higher education. For this reason, and the later clarification of the intent of Article XIII-A found in the above referenced decision, and subsequent statutory law, those opinions are no longer deemed correct.
¶ 11 Additionally, these prior opinions are deemed to be in error as to this issue due to their failure to recognize the inherent authority granted to the State Regents by the Constitution to themselves determine what criteria shall be utilized for deciding which persons are eligible to receive academic recognition by the State System. There does not appear to be any limitation on the ability of the State Regents to authorize the conferring of degrees to worthy persons based upon whatever criteria the State Regents deem adequate to safeguard the "standards of higher education applicable" to the various institutions in the State System, the State Regents themselves being the sole authority empowered by law to make such decisions. In this regard, however, it is also noted that the practice of conferring honorary degrees is one that has been much criticized in some circles, as its occasional abuse is well-recognized. Knowles, supra. Only the State Regents have the authority in this State to authorize the conferring of such degrees, and the adoption of reasonable guidelines by the Regents regulating the practice is a necessary predicate to engaging in this function.
¶ 12 One final note in this area is to recognize the continued recodification in the Oklahoma Statutes of the terms of 70 O.S.1921-70 O.S. 1925 (1981). This set of laws, stemming originally back to 1917, appears to statutorily invest in individual institutions of the State System some retained right, as individual institutions, to themselves grant academic degrees. This same set of laws was reviewed in another portion of the opinion referred to above issued in 1941 to John Oliver, and was declared unconstitutional to the degree that it conflicted with the terms of Article XIII-A, which grants the exclusive authority to grant degrees with the State Regents. These laws have never been deleted from the statutes of the State. Yet they are still deemed unconstitutional to the degree that they operate to attempt to divest any authority of the State Regents in this area of concern. The prior opinion is, therefore, reaffirmed herein as to this issue.
¶ 13 It is, therefore, the official opinion of the AttorneyGeneral that the Oklahoma State Regents for Higher Education havethe power, under Article XIII-A, Section 2 of the OklahomaConstitution, and 70 O.S. 3206(m) (1981), to award honorarydegrees to persons deemed of deserving merit. Further, the StateRegents have the authority to regulate and coordinate theconferring of such degrees by the adoption of reasonable rulesdesigned to ensure and protect the standards of higher educationset by the Regents under their constitutional mandate. To theextent that the opinions rendered on December 12, 1941, to JohnOliver, Administrative Officer for the State Regents for HigherEducation, and on August 10, 1949, to R.T. Stuart, Chairman ofthe Board of Regents for Oklahoma Agricultural and MechanicalColleges, are in conflict with this opinion, they are modified toconform to the advice rendered herein. The opinion issued onDecember 12, 1941, to John Oliver is reaffirmed in part as to itsadvice that only the State Regents have the authority to issueacademic degrees, despite statutory language that might appear tothe contrary, and the terms of 70 O.S. 1921-70 O.S. 1925(1981), to the extent they would operate to attempt to divestthe State Regents of their authority in this field, areunconstitutional.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN ASSISTANT ATTORNEY GENERAL DEPUTY CHIEF, GENERAL COUNSEL DIVISION