Dear Senator Price.
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. May the Grand River Dam Authority ("GRDA"), a State agency,provide additional benefits in the form of tax sheltereddeferment plans or supplemental retirement plans to its generalmanager and top administrative officials, even if those benefitsare not specifically authorized by State law?
 2. If the answer to question 1 is "yes," should such deferredcompensation properly be included as part of the salary of suchemployees as set by statute?
 3. If the answer to question 2 is "yes," and inclusion of suchdeferred compensation benefits when so included in salary exceedsthe maximum salary established for such employees, are thedeferred benefits void ab initio?
 4. If the answer to question 1 or 2 is "yes," should suchdeferred compensation amounts have been included in the salariesreported to the Oklahoma Public Employees Retirement System("OPERS")?
 I. Introduction
¶ 1 Your questions deal with the authority of the Grand River Dam Authority ("GRDA") and its ability to give additional benefits to key personnel. GRDA's enabling statutes read in pertinent part as follows:
 There is hereby created within the State of Oklahoma a conservation and reclamation district to be known as" Grand River Dam Authority", hereinafter called the district. . . . Such district shall be, and is hereby declared to be, a governmental agency of the State of Oklahoma, body politic and corporate, with powers of government and with the authority to exercise the rights, privileges and functions hereinafter specified, including the control, storing, preservation and distribution of the waters of the Grand River and its tributaries, for irrigation, power and other useful purposes and reclamation and irrigation of arid, semiarid and other lands needing irrigation, and the conservation and development of the forests, minerals, land, water and other resources and the conservation and development of hydroelectric power and other electrical energy, from whatever source derived, of the State of Oklahoma.
82 O.S. 2001, § 861[82-861] (emphasis added).
¶ 2 GRDA is a State agency. See Int'l Bhd. of Elec. Workers,Local Union 976 v. Grand River Dam Auth., 292 P.2d 1018, 1020
(Okla. 1956) (concluding that employees of GRDA work for the State of Oklahoma). As a State agency, GRDA is therefore subject to the same general laws governing other State agencies.
¶ 3 The board of directors of GRDA is authorized to hire a general manager as chief executive officer of the agency, 82O.S. 2001, § 864[82-864] (A)(2), and set his salary. Id. § 864(A)(3). However, the Legislature has directed that the "salary" of GRDA's general manager "shall not exceed the amount specified, per annum, payable monthly," of $115,000. 74 O.S. 2001, § 3601[74-3601] (C).
¶ 4 Information provided by you indicates that in 1994 GRDA established a "Supplemental Retirement Benefit Plan" ("Plan") for the executive director, along with other key personnel.[1]See Supplemental Retirement Benefit Plan of the Grand River Dam Authority (1994) (on file with the Oklahoma Attorney General's Office). The stated purpose of the Plan is to "help the Employer attract and retain experienced, competent and talented executives and key employees by providing for contingent supplemental retirement benefits in addition to the amounts that may be deferred under Employer's Deferred Compensation Plan." Id.
Article 2 Supplemental Retirement Benefit Plan, § 2.1 General Terms at 4. The Plan works by the employer's establishing a "Supplemental Retirement Benefit Account" for each participant.Id. § 2.4 Accounts in Supplemental Retirement Benefit Plan, § 2.4.1 at 5. The Plan is credited on the first day of each Plan year "with the amount of Employer's unsecured promise to pay supplemental retirement benefits to Participant upon Participant's satisfaction of the specified conditions." Id. It is the employer who invests "available funds in any investments allowable under applicable law." Id. § 2.4.2 at 6. Title to any assets "shall at all times remain in the Employer," with the participant having no interest in any specific assets as a result of participation in the Plan. Id. § 2.4.4 at 6; See also Id.
Article 3 Administration of Master Deferred Compensation Plan, § 3.7 Relationship of Participant under this Plan at 9-10. ("Nothing contained herein shall be deemed to create a trust of any kind or create any fiduciary relationship between the Employer and any Participant. Any funds that may be set aside for investment or earmarked by the Employer to pay benefits hereunder shall continue for all purposes to be a part of the general funds of the Employer, and no person other than the Employer shall have any interest in such funds by virtue of the provisions of this Plan. Any such funds or assets shall at all times during the term of this Plan be and remain the assets of the Employer and subject to the general creditors of the Employer."). Assets in the Plan can vest when the participant either reaches retirement, or completes five years of full time employment, (id. Article 2 Supplemental Retirement Benefit Plan, § 2.2(1) at 4), at which point "the Employer shall pay to him in a single lump sum distribution on or after the first day of the month next following the date of such occurrence an amount equal to the fair market value of the assets, if any, in the Supplemental Retirement Benefit Account, or, in the alternative, the accumulated amount credited to the Supplemental Retirement Benefit Account in lieu of actual investments." Id. § 2.6 Payment of Amounts Due Under Supplemental Retirement Benefit Plan, § 2.6.1 at 6. If the participant does not want a lump sum, he can elect to receive equal monthly installments over a period not to exceed 180 months. Id. If the Plan is held in whole or in part to be invalid, "the obligation to be fulfilled shall be reduced to the limit of validity prescribed by law." Article 6 Miscellaneous, § 6.1 Invalidity at 13. The Plan is to be construed in accordance with Oklahoma law. Id. § 6.4 Oklahoma Law at 13.
¶ 5 The individual Joinder Agreement of Ron Coker dated July 20, 1994, states that the Plan is made available "[i]n order to provide Participant with incentive to continue to provide services to Employer and forego available employment opportunities elsewhere," (id. Recitals(C)) because the participant "performs valuable services as the chief executive officer and general manager of the Employer." Id. Recitals(A). Accordingly, "Employer desires to provide incentive to Participant to continue to contribute to the operations of Employer." Id.
¶ 6 You first ask whether GRDA can provide these additional benefits which are not specifically authorized by State law. Since by the clear terms of the agreement, this is a retirement plan, we first look at the State retirement plan in general, then examine the deferred compensation plan in particular.
 II. State Retirement Plans
¶ 7 General authority to establish a retirement plan for State employees is found at 74 O.S. 2001, §§ 901-932. All State agencies are required to participate in the general retirement plan. Id. § 910(2). The purpose of the retirement plan is to:
 [P]rovide an orderly means whereby employees of the participating employers who qualify by reason of age, or condition, and service, as herein set forth, may be transferred to inactive service without prejudice and without inflicting undue hardship upon the employees transferred, and to enable such employees to accumulate deferred income reserves for themselves and their dependents to provide for old age, death, and inactive service, and for the purpose of effecting economy and efficiency in the administration of governmental affairs.
Id. § 901(A). The plan is administered by the Oklahoma Public Employees Retirement System ("OPERS"). Id. § 903.
¶ 8 Of concern to your question is the Legislative pronouncement limiting State retirement plans:
 From and after the passage of this act no county hospital, or county or state governmental agency, shall institute a retirement system other than as provided for in this act,[2] except as to any other supplemental retirement plans otherwise expressly provided for by law.
Id. § 910(3) (emphasis added) (footnote added).
¶ 9 The common definition of the word "supplement," 25 O.S.2001, § 1[25-1] (requiring that "[w]ords used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears") is "something that supplies a want or makes an addition." Webster's Third New International Dictionary 2297 (3d ed. 1993). One such additional plan is a tax sheltered deferment plan. As that plan is the linchpin of GRDA's claimed authority for its separate plan,[3] we will examine that plan. But first, a review of the scope of GRDA's authority as a State agency is in order.
 III. Scope Of Agency's Authority
¶ 10 As a general proposition, the question concerning the executive branch is not what it is prohibited from doing, but what it is allowed to do. See Tweedy v. Okla. Bar Ass'n,624 P.2d 1049, 1054 (Okla. 1981) ("Even though the federal constitution unlike our own does not explicitly enjoin a division of responsibilities among the three branches, neither does it expressly authorize their merger.") (emphasis added) (footnote omitted); A.G. Opin. 87-100, 191 ("The role of the executive branch in expending state monies is limited primarily by the Legislature itself via the enactment of statutory law."). As a corollary, it is beyond dispute that agencies have only those powers explicitly given them by the Legislature or fairly implied from that explicit authority. Marley v. Cannon,618 P.2d 401, 405 (Okla. 1980).[4]
¶ 11 In light of the above discussion and the language of 74O.S. 2001, § 910[74-910] (3), we shall first determine whether GRDA has express authorization to establish its own supplemental retirement plan. If it does not, we will examine whether authorization for a plan can be fairly implied from the authority given the agency.
 IV. Tax Sheltered Income Deferment Plans
¶ 12 Tax sheltered income deferment plans refer to an option of the employee to have a portion of his or her income deducted to lower tax liability before a paycheck is issued. Oklahoma has enacted a statute allowing for the establishment of tax sheltered income deferment plans. The statute allowing the establishment of such a plan reads:
 A. The State of Oklahoma, its agencies and the political subdivisions thereof and the employees of a duly constituted authority or instrumentality of the State of Oklahoma, its agencies and the political subdivisions thereof, municipalities and any local governmental entity may enter into a written agreement to defer a portion of any employee's compensation which is derived from a state or local government. The compensation to be deferred shall be subject to any federal limitations imposed by the Internal Revenue Code, Sections 1 et seq. of Title 26 of the United States Code. The state or local governments may, under a written agreement, invest the deferred compensation in life insurance, annuities, United States Agency or Treasury Bills, Notes or Bonds, savings accounts and/or mutual funds with a company licensed or eligible to do business in the state or in a contract or commingled trust or program. Deferred compensation programs shall exist and be in addition to, and not be a part of, any existing retirement, pension or Social Security system provided for the benefit of state and local government employees.
 B. The Oklahoma Public Employees Retirement System Board shall offer a deferred compensation program and shall be responsible for establishing rules and regulations and participation agreement forms for said program. The Oklahoma State Employee Benefits Council shall communicate this program with eligible participants.
74 O.S. 2001, § 1701[74-1701] (emphasis added).
A. GRDA's Authority as an Agency
¶ 13 An examination of GRDA's enabling legislation reveals no express authority as required by 74 O.S. 2001, § 910[74-910] (3) for GRDA to establish such a plan. We next turn to the general powers of the agency to determine if power to establish a plan can be fairly implied.
¶ 14 Generally, GRDA is authorized to exercise control over the waters of Grand River and its tributaries; develop and generate water power, electric power and electric energy and sell that power; to acquire coal or other minerals to be used for electrical generating plants; to prevent or aid in the prevention of damage resulting from the waters of Grand River and its tributaries; and to forest and reforest the area and prevent soil erosion. 82 O.S. 2001, § 862[82-862] (a)-(d). The establishment of a deferred compensation plan outside the legislatively authorized procedure cannot be fairly or necessarily implied from these powers. This, combined with the fact there is no specific authorization to establish a deferred compensation plan outside the legislatively authorized procedures as set forth in the statutes, leads us to the conclusion GRDA cannot establish such a plan.
B. Contracts found in 74 O.S. 2001, § 1701[74-1701]
i. Subsection (A)
¶ 15 This view is supported by an analysis of subsection (A) of Section 1701. That subsection shows there are two contracts. The first is between the employee and his employing agency, in which the employee agrees to allow a certain portion of his salary to be deposited into a deferred compensation plan. This contract is between the employee and "[t]he State of Oklahoma, its agencies and the political subdivisions thereof." Id. The second contract consists of an agreement between "[t]he state or local governments" and "a company licensed or eligible to do business in the state or in a contract or commingled trust or program."Id. The fact the party in the first contract is the State or "agencies," while the party in the second contract is "the State of Oklahoma" is significant. It implies that the agency's role in the deferred compensation program is limited to the agreement with the employee to have certain portions of the salary deducted, while the actual implementation and administration of the program is done at a statewide level — as opposed to an agency-by agency implementation and administration — by the State and another company.
ii. Subsection (B)
¶ 16 This interpretation — that the State as a singular unit, and not individual agencies, is empowered to implement and administer deferred compensation plans — is strengthened by a comparison of the law before and after an amendment to subsection (B) of § 1701 in Title 74. In 1991, subsection (B) read:
 The Oklahoma Public Employees Retirement System Board shall be responsible for establishing rules and regulations and participation agreement forms for deferred compensation programs of state government.
Id.. As later amended, the law now reads:
 The Oklahoma Public Employees Retirement System Board shall offer a deferred compensation program and shall be responsible for establishing rules and regulations and participation agreement forms for deferred compensation programs of state government said program. The Employee Benefits Council shall communicate this program with eligible participants.
1993 Okla. Sess. Laws ch. 359, § 12 (now codified as 74 O.S.2001, § 1701[74-1701] (B)).
¶ 17 The amendments to § 1701(B) make it clear that the Legislature intends any deferred compensation plan established under § 1701 shall be administered not by the individual agencies, but by the State as a whole through a single agency.
¶ 18 The Legislature has expressly provided for other retirement systems, and expressly gave authority for administration of the § 1701 plan to OPERS. There is no such parallel provision specifically authorizing GRDA to implement its own retirement system, and such power cannot be fairly implied from the agency's explicit authority. Therefore, GRDA cannot implement a "Supplemental Retirement Benefit Plan." This would apply to all top administrative officials as well as the general manager.
 V. Conclusion
¶ 19 The salary of the Executive Director is limited to $115,000 by 74 O.S. 2001, § 3601[74-3601] (C). GRDA is a statutorily created State agency, and as such, has only those powers explicitly given to it by the Legislature or fairly implied from that explicit authority. The Legislature did not explicitly give GRDA authority to establish a supplemental retirement plan, nor can the authority to do so be fairly implied from GRDA's explicit authority, which is land and water conservation and power generation.
¶ 20 In light of the answer to your first question, we need not answer your other questions.
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The Grand River Dam Authority ("GRDA") cannot provideadditional benefits to the general manager and top administrativeofficials in the form of tax sheltered deferment plans orsupplemental retirement plans because those benefits are notspecifically authorized by State law, nor can they be fairlyimplied from the explicit authority given to the GRDA. 74 O.S.2001, §§ 3601(C), 1701; 82 O.S. 2001, §§ 861, 862.
W.A. DREW EDMONDSON Attorney General of Oklahoma
DAN CONNALLY Assistant Attorney General
[1] The agreement uses the term "Supplemental Retirement Benefit Plan." However, in your view letters submitted in response to your questions GRDA repeatedly refers to the Plan as a "deferred compensation plan." See Letter from Robert A. Nance, Attorney, to Tom Gruber, First Assistant Attorney General (March 4, 2002) (on file with the Attorney General's Office); Letter from Robert A. Nance, Attorney, to Dan Connally, Assistant Attorney General (March 18, 2002) (on file with the Attorney General's Office). Since GRDA also claims its authority for its Plan stems from 74 O.S. 2001, § 1701[74-1701] (discussed below), and that statute refers to "deferred compensation plans," that term or "Plan" will be used throughout to describe GRDA's Supplemental Retirement Benefit Plan. Id.
[2] The Legislature has expressly provided for other retirement lans. See, e.g., 11 O.S. 2001, §§ 50-101-50-136.4 (Police Pension and Retirement System); 47 O.S. 2001, §§ 2-300-2-314 (Law Enforcement Retirement System); 11 O.S. 2001, §§49-100.1-49-143.3 (Firefighters Pension and Retirement System). These other retirement plans are not the subject of this Opinion.
[3] See Letter from Robert A. Nance, Attorney, to Dan Connally, Assistant Attorney General at 3(March 18, 2002) (on file with the Attorney General's Office) ("As indicated in [an earlier letter], 74 O.S. § 1701[74-1701], not § 901, provides the authority for GRDA to enter into deferred compensation contracts."). See Letter from Robert A. Nance, Attorney, to Tom Gruber, First Assistant Attorney General at 6 (March 4, 2002) (on file with the Attorney General's Office).
[4] In its March 4, 2002 view letter, GRDA claims its enabling language gives it the power to establish its own retirement plan, and that it is not limited to the rule enunciated in Marley.Id. at 4-5. It cites in support of this claim that it exercises the "powers of government" and as such has the power to establish its own plan. In support of this argument GRDA cites Board ofRegents v. Baker, 638 P.2d 464, 469 (Okla. 1981), which deals with the powers of a constitutional entity. The letter acknowledges that the Baker holding rests on constitutional provisions, but argues there is no reason why the "powers of government" conferred on GRDA by statute would not permit the plan it has in place. Id. at 5.
This argument need not detain us long. There is a considerable difference between something which is established by the Oklahoma Constitution, such as the Oklahoma Board of Regents, and a statutorily created entity such as GRDA. As the case cited by GRDA states:
 While the law-making power of the Legislature is supreme within its proper sphere, that power may be restricted and limited by constitutional provisions.
Limitations on legislative authority may be implied as well as expressed in the Constitution. Every positive delegation of power by the Constitution to one officer or department of government implies a negation of its exercise by any other officer or department.
Baker, 638 P.2d at 466 (emphasis added) (citations omitted). That is precisely the issue here: whether GRDA, as any other State agency created by statute, is limited in the creation of a retirement plan by the Legislature as set forth in 74 O.S.2001, § 910[74-910] (3). Given that GRDA has no constitutional basis for its authority, there is no negation of the inherent legislative power to limit GRDA's powers as the Legislature sees fit.