Dear Senator Corn:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. The State Use Committee, which was created in the Department of Central Services ("DCS") pursuant to 74 O.S. Supp. 2005, § 3001[74-3001](A), has the duty to designate a procurement schedule of products and services provided by qualified nonprofit agencies for the severely disabled. 74 O.S. 2001, § 3004[74-3004]. State agencies are required to purchase any needed items on the procurement schedule from the designated nonprofit agencies. Id. § 3007(A). The following questions pertain to the State's purchases of items on the procurement schedule:
 a. Does the Director of DCS have the authority to cancel the State's current contracts with State Use Committee vendors and implement an internet-based system of purchasing goods that requires vendors with current contracts to subcontract with an entity under contract with DCS to facilitate the purchase of goods through the internet-based system in order for such vendors to be able to make sales to state agencies?
 b. May the Director of DCS contract with an outside vendor to provide an internet-based service which allows state agencies to place orders over the internet for goods listed on the procurement schedule?
 c. Does the State Use Committee have the authority to authorize the Director of DCS to issue a Request For Proposal for items listed on the procurement schedule?
 2. May an entity sell software to a state agency if the entity has, through a professional services contract, provided assistance to the agency in developing a Request for Proposal for the purchase of such software?
 3. May an entity sell services to a state agency if a partner of the entity has, through a professional services contract, provided assistance to the agency in developing a Request for Proposal for the purchase of such services?
 I. AUTHORITY OF THE DIRECTOR OF DCS WITH RESPECT TO THE STATE'S CONTRACTS WITH VENDORS APPROVED BY THE STATE USE COMMITTEE
Your first two questions concern the authority of the Director of DCS with respect to contracts with vendors qualified by the State Use Committee, which was "created in the Department of Central Services" pursuant to 74 O.S. Supp. 2005, § 3001[74-3001](A). Under the administrative rules promulgated by DCS, a State Use Committee ("Committee") is defined as "a committee that certifies severely disabled individuals and sheltered workshops as qualified organizations that contract with the state to provide products and services made by severely disabled individuals, and establishes the State Use Committee procurement schedule for state agency use pursuant to 74 O.S., Sections 3001 et seq." OAC580:15-2-2 (2005).
The Committee performs duties that implement a statute which requires state agencies to purchase goods and services from nonprofit agencies "providing employment to people with severe disabilities at the fair market price determined by the Committee if the product or service is available within the period required by the entity." 74 O.S. 2001, § 3007[74-3007](A). The Committee's duties include (1) designating a procurement schedule of the products or services offered or provided by any severely disabled person[1] or qualified nonprofit agency for the severely disabled[2] suitable for procurement by the state; (2) determining the fair market price of all products and services included in the procurement schedule; and (3) prescribing "rules to carry out the purposes of the provisions of Sections 3001 through 3009 of this title." Id. §§ 3004, 3005, 3009(A). The Committee also qualifies individuals and agencies that meet the statutory definition of "severely disabled person" or "qualified nonprofit agency." OAC 304:10-1-3(b)(1), (c). " Procurements made pursuant to this act shall not be subject to the competitive bid requirements of the Oklahoma Central Purchasing Act. . . ." 74 O.S. 2001, § 3008[74-3008].
The Committee consists of five voting members, including the Director of DCS or designee and one "nonvoting member, a person employed by the Department of Central Services as a contracting officer in the purchasing division, appointed by the State Purchasing Director with the advice of the Committee and designated specifically to solicit, develop and negotiate contracts. . . ." 74 O.S. Supp. 2005, § 3001[74-3001](A)(6).
You first ask whether the Director of DCS has the authority to cancel current contracts with Committee vendors and implement an internet-based system of purchasing goods that requires vendors with currently existing contracts to subcontract with an entity which has contracted with DCS to facilitate the purchase of goods through the internet-based system in order for such vendors to be able to make sales to state agencies. Public officers or agencies may only exercise those powers that are expressly given by statute and "such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers." Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980). Therefore, the answer to your question requires a review of the powers granted to the Director of DCS.
The DCS is "under the administrative control of the Director of Central Services." 74 O.S. 2001, § 61.2[74-61.2]. The Director is appointed by the Governor with the advice and consent of the Senate. Id. § 61.1. The authority of the Director with respect to purchasing is set forth in the Central Purchasing Act ("Act").See 74 O.S. 2001 Supp. 2005, §§ 85.1-85.44C. The Act creates a Purchasing Division headed by the State Purchasing Director, who is hired by the Director of DCS. 74 O.S. 2001, § 85.3[74-85.3] (A), (B). "All activities of any state agency, department, or institution relating to purchasing shall be under the direction of the Purchasing Division unless otherwise provided by [the Act]." Id. § 85.3(D). "[T]he State Purchasing Director, under the supervision of the Director of the Department of Central Services, shall have sole and exclusive authority and responsibility for all acquisitions used or consumed by state agencies." 74 O.S. Supp. 2005, § 85.5[74-85.5](A). DCS is the "sole entity with the authority to negotiate and accept contract offers[.]"Indiana Nat'l Bank v. State Dep't of Human Serv., 857 P.2d 53,61-62 (Okla. 1993). The court found that the overriding public policy interest in the Act, which requires vendors selling goods and services to state agencies to deal with a central entity (DCS), is to "promote efficient and cost effective use of taxpayer money and to prevent fraud in these dealings." Id. at 65.
The Director of DCS has the authority to promulgate rules on various matters relating to state purchasing including, among others, the "time, manner, authentication, and form of making requisitions for acquisitions"; and "compliance with provisions of Section[s] 3001 et seq. of this title, which relate to the State Use Committee." Id. § 85.5(C)(1), (11). The rules promulgated by the Director include a provision requiring state agencies to make acquisitions from suppliers on the Committee procurement schedule, which provides:
 (2) State Use Committee. State agencies shall make acquisitions from suppliers on the State Use Committee procurement schedule regardless of the acquisition purchase price if the supplier's delivery date meets state agency requirements. State Use Committee statewide contracts are mandatory statewide contracts. State agencies shall reference the State Use Committee procurement schedule to ensure all acquisitions are pursuant to 74 O.S., Section 3007. An agency may make an open market acquisition of a specified commodity or class of commodities on the State Use Committee procurement schedule upon receipt of a written waiver from the State Use Committee contracting officer.
OAC 580:15-6-5 (2005).
The State Purchasing Director is required to "review state agency acquisitions for the purposes of: . . . [e]nsuring state agency compliance with provisions of Section[s] 3001 et seq. of this title pertaining to the State Use Committee[.]" 74 O.S. Supp. 2005, § 85.5[74-85.5](E), (E)(3). The Purchasing Director is required to report any acquisition by any state agency that is not in compliance with those sections to the Director of DCS. Id. § 85.5(E)(4).
The three components of your first question will be addressed separately. With respect to the question of whether the DCS Director may cancel contracts with current vendors, such contracts may only be cancelled for reasons specified in DCS rules or as specified in the contract itself. DCS rules provide a list of circumstances in which the State Purchasing Director may cancel contracts with vendors. See OAC 580:15-4-17 (2003). In addition, the contract may contain additional terms relating to the circumstances under which the contract may be terminated. Whether the Director has the power to cancel any particular contract is a question of fact that is outside the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
The second part of your first question is whether the Director may implement an internet-based ordering system of purchasing goods by state agencies. The Purchasing Director, who is under the supervision of the DCS Director, has "the authority and responsibility for all acquisitions used or consumed by state agencies." 74 O.S. Supp. 2005, § 85.5[74-85.5](A). The grant of this authority would necessarily include the power to specify the procedures that agencies must follow in ordering acquisitions.See Marley, 618 P.2d at 405 (recognizing public officers may exercise express powers and "such powers as are necessary for the due and efficient exercise of the powers expressly granted"). The Director would thus have the power to implement an internet-based ordering system of purchasing goods by state agencies.
The final part of your first question is whether such a system may be implemented if it requires vendors with currently existing contracts to subcontract with an entity under contract with DCS to facilitate the purchase of goods through the internet-based system in order for such vendors to be able to make sales to state agencies.[3] The Director may implement an internet-based system of ordering goods and services if the system directs the orders for items on the procurement schedule to State Use vendors as specified in 74 O.S. 2001, § 3007[74-3007](A). The Director may not require vendors on the procurement schedule to subcontract with the entity that is providing the internet-based ordering system. See 74 O.S. 2001, § 3007[74-3007](A); OAC 580:15-6-5(2) (2005). The statutes and rules governing the State Use program contracts do not authorize the imposition of such a requirement, either expressly or by implication. Id.
You next ask whether the Director of DCS may contract with an outside vendor to provide an internet-based service which allows state agencies to place orders over the internet for goods listed on the procurement schedule established pursuant to Section 3004 of Title 74. Section 3004 directs the Committee to designate a procurement schedule consisting of the products manufactured, produced, processed or assembled by any severely disabled person or qualified nonprofit agency for the severely disabled which are suitable for procurement by the state. Id. State agencies are required to purchase from the procurement schedule if the product is available within the period required by the agency. Id. § 3007(A). State agencies may make an open market acquisition for a commodity on the procurement schedule "upon receipt of a written waiver from the State Use Committee contracting officer." OAC580:15-6-5(2) (2005). Thus, state agencies may buy items that are on the State Use procurement schedule from non-State Use vendors if the product is not available from a State Use vendor within the time period required by the agency and if the agency has obtained a written waiver from the Committee contracting officer.
Because of his authority over state acquisitions (74 O.S. Supp. 2005 § 85.5[74-85.5](A)), the Director of DCS may contract with an outside vendor to provide a service that allows state agencies to place orders for goods listed on the procurement schedule over the internet as long as such orders are routed to qualified State Use vendors. The orders may be routed to other vendors if the product is not available within the time period required by the agency and if the agency has a waiver from the Committee contracting officer. Id. § 3007(A); OAC 580:15-6-5(2) (2005). As long as the internet-based service complies with the statutory requirement that state agencies purchase items on the procurement schedule from State Use vendors, the Director of DCS may contract with an outside vendor to provide an internet-based service that allows state agencies to place orders over the internet for goods listed on the procurement schedule.
 II. AUTHORITY OF THE STATE USE COMMITTEE WITH RESPECT TO STATE CONTRACTS
You next ask whether the Committee has the authority to authorize the Director of DCS to issue a Request for Proposal ("RFP")[4] for items listed on the procurement schedule established pursuant to Section 3004 of Title 74. As has already been noted, public officers or agencies may only exercise those powers that are expressly given by statute or fairly implied from the express powers. Marley, 618 P.2d at 405. Therefore, your question requires an analysis of the powers of the Committee.
The Committee has the specific statutory authority to (1) designate a procurement schedule (74 O.S. 2001, § 3004[74-3004]) and (2) determine the fair market price of all products and services included in the procurement schedule (Id. § 3005). The Committee must also prescribe rules, including requirements for publishing an annual catalog listing goods, services, and jobs that workshops can provide the state, and guidelines for vendor grievances. Id. § 3009(B)(1), (5). The Committee also qualifies individuals and agencies that meet the statutory definition of "severely disabled person" or "qualified nonprofit agency." OAC304:10-1-3(b)(1), (c) (2005). In addition, the Committee has the discretion to "designate a central nonprofit agency to facilitate the distribution of orders of the state for products or services on the procurement schedule among qualified nonprofit agencies for people with severe disabilities." Id. § 3006.
The Committee was "created in the Department of Central Services." 74 O.S. Supp. 2005, § 3001[74-3001](a). The DCS contracting officer appointed to the Committee by the State Purchasing Director with the advice of the Committee is "to solicit, develop, and negotiate contracts with agencies and individuals."Id. § 3001(A)(6). A one-percent fee is to be charged to qualified organizations to be deposited in the State Use Committee Revolving Fund for "the salary, administrative costs, and other expenses incurred by the Purchasing Division of the Department of Central Services for promoting goods and services provided by qualified organizations." Id. § 3004.1. The Fund was created in the State Treasury "for the Department of Central Services." Id. § 3004.2
The Committee itself has no statutory authority to issue or authorize RFPs or to enter into contracts. The Committee qualifies the vendors, prepares the procurement schedule and establishes the fair market price of goods and services on the schedule, but does not enter into contracts with vendors. Unless otherwise provided by law, the Purchasing Division of DCS has the sole authority and responsibility for state purchasing contracts.Id. § 85.3(D). The State Purchasing Director has authority to issue RFPs for acquisitions by state agencies. OAC 580:15-4-5(b) (2005). Contracts with vendors on the Committee procurement schedule are between the vendor and the Purchasing Division of DCS. The state's contracts with procurement schedule vendors are not the result of an RFP process, but rather, are negotiated at the conclusion of a process by which the Committee qualifies vendors and establishes a procurement schedule of goods and services offered by such vendors.
Although items on the procurement schedule must be purchased from vendors on the schedule, there are circumstances under which agencies may purchase such items from other vendors, such as where the item is not available within the time frame needed by the agency and the agency has a waiver from the DCS contracting officer assigned to the Committee. 74 O.S. 2001, § 3007[74-3007](A); OAC580:15-6-5(2) (2005). Therefore, the Director has the authority to issue an RFP for items listed on the procurement schedule. The Director may consult with the Committee with respect to such an RFP, but is not required to have the Committee's authorization prior to issuing the RFP.
 III. CONFLICT OF INTEREST ISSUES IN THE CONTEXT OF A REQUEST FOR PROPOSAL
Your final two questions concern related conflict of interest issues; namely, (1) whether an entity may sell software to a state agency if the entity has, through a professional services contract, provided assistance to the agency in developing an RFP for the purchase of such software, and (2) whether an entity may sell services to a state agency if a partner of the entity has, through a professional services contract, provided assistance to the agency in developing an RFP for the purchase of such services.
The Act requires state agencies to purchase products exceeding $25,000.00 through DCS pursuant to a competitive bidding procedure, except as otherwise provided by the Act. 74 O.S. Supp. 2005, §§ 85.4[74-85.4](A), 85.7(A). The Director of DCS has the authority to promulgate rules governing the "form and manner of submission for bids or proposals a supplier submits and the manner of accepting and opening bids or proposals[.]" Id. § 85.5(C)(3). Pursuant to such rules, the State Purchasing Director is to "issue solicitations for acquisitions by invitation to bid, request for proposal or request for quotation." OAC 580:15-4-5(b) (2005). The Purchasing Division must comply with the Act and rules "to ensure fair competition for suppliers."Id. at 15-4-5(a).
It would not be a fair competition if a bidder had advance notice of the terms of an RFP, such as would be the case if the bidder assisted in preparing the RFP. The basis for finding a conflict of interest in such situations was explained by the court in Medco Behavioral Care Corp. v. State of Iowa Department ofHuman Services, 553 N.W.2d 556 (Iowa 1996). "In such cases the concern is that the firm could either skew competition in favor of itself when developing the terms of the procurement, or, through its inside knowledge of the agency's requirements, gain an unfair advantage in the competitive bidding process." Id. at 565. Therefore, an entity may not sell software to a state agency if the entity has, through a professional services contract, provided assistance to the agency in developing an RFP for the purchase of such software.
The analysis would be similar where an entity bids on an RFP for services which was prepared with the assistance of a partner of the entity; however, it would be necessary to examine the facts surrounding the relationship between the partners to determine if a conflict of interest actually existed. If a partner of an entity that has assisted in the preparation of an RFP is in a position to obtain advance information about the terms of an RFP from such entity, then the prohibition against bidding on the RFP would extend to the partner of the entity. "Partnership" is defined in the Oklahoma Revised Uniform Partnership Act as "an association of two or more persons to carry on as co-owners a business for profit formed under . . . this act. . . ." 54 O.S. 2001, § 1-101[54-1-101](6). There may be situations, such as in a limited partnership with numerous limited partners, where partners may not have any interaction with each other and would not be in a position to share information. Whether any particular business relationship would create a conflict of interest under circumstances where a partner of an entity has assisted in the development of an RFP is a question of fact that is outside the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Director of the Department of Central Services may only cancel contracts with State Use Committee vendors for reasons specified by OAC 580:15-4-17 or as authorized by the terms of the contract. The Director may implement an internet-based system of purchasing goods as long as the orders for products on the State Use procurement schedule are routed to State Use vendors. The Director may not require State Use vendors to subcontract with the entity under contract to operate the internet-based purchasing system in order for such vendors to be able to make sales to state agencies. See 74 O.S. 2001, § 3007[74-3007](A); OAC 580:15-6-5(2) (2005).
 2. The Director of the Department of Central Services may contract with an outside vendor to provide an internet-based service that allows state agencies to place orders over the internet for goods listed on the State Use Committee Procurement Schedule if the orders are directed by the internet-based service to State Use vendors for those products that are available from such vendors within the period required by the state agencies. 74 O.S. Supp. 2005 §§ 85.5[74-85.5](A), 3007(A); OAC 580:15-6-5(2) (2005).
 3. Unless otherwise provided by law, the State Purchasing Director, under the supervision of the Director of the Department of Central Services, has sole authority over state purchasing contracts, including the issuance of Requests for Proposals ("RFP") for acquisitions by State agencies. 74 O.S. Supp. 2005, § 85.5[74-85.5](A); OAC 580:15-4-5(b). The State Use Committee does not have authority to enter into contracts or to issue or authorize RFPs. State contracts with State Use vendors for items on the procurement schedule are not awarded through an RFP process, but rather, are awarded by the Purchasing Division after approval of the vendor by the State Use Committee and the inclusion of the vendor's products on the procurement schedule. Because state agencies may purchase items on the procurement schedule from other vendors where the items are not available from State Use vendors within the time frame required by the agency, the Director of the Department of Central Services may issue an RFP for items listed on the procurement schedule.
 4. An entity may not be awarded a contract for the sale of software to a state agency if the entity has, through a professional services contract, provided assistance to the agency in developing a Request for Proposal for the purchase of such software. Medco Behavioral Care Corp. v. State of Iowa Dep't of Human Serv., 553 N.W.2d 556, 565 (Iowa 1996).
 5. Depending upon the particular facts and circumstances of the business relationship, it may be a conflict of interest for an entity to sell services to a state agency if a partner of the entity has, through a professional services contract, provided assistance to the agency in developing a Request for Proposal for the purchase of such services. Whether any particular business relationship would create a conflict of interest under circumstances where a partner of an entity has assisted in the development of an RFP is a question of fact that is outside the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
KATHRYN BASS Assistant Attorney General
[1] "Severely disabled person" is defined in the Committee statutes as "an individual with a physical or mental disability constituting a substantial handicap to employment and preventing the person from engaging in normal competitive employment and includes any blind person[.]" 74 O.S. Supp. 2005, § 3003[74-3003](4).
[2] "Qualified nonprofit agency for the severely handicapped" is defined in the Committee statutes as "a nonprofit agency which is certified as a sheltered workshop by the wage and hour division of the U.S. Department of Labor and employing severely disabled persons who constitute at least seventy-five percent (75%) of the personnel engaged in direct production of products or services offered by the agency for procurement by this state[.]" Id. § 3003(3).
[3] Information provided to this office reflects that the internet-based ordering system under consideration by DCS does not require vendors to subcontract with the entity that manages the proposed system. See letter from Kim Heaton, General Counsel, Department of Central Services, to Kathy Bass, Assistant Attorney General 2 (Mar. 24, 2006) (on file with the Oklahoma Attorney General's Office) ("State Use vendor contracts will remain intact; the only significant change to State Use vendors will be that they will receive orders from the portal rather than directly from state agencies.").
[4] "Request for Proposal" is defined in DCS rules as "a type of solicitation a state agency or the State Purchasing Director provides to suppliers requesting submission of proposals for acquisitions." OAC 580:15-2-2 (2005).